Ruffin, C. J.
 

 If the position taken for
 
 the
 
 defendant were true, it would not entitle him to an acquittal of the charge of selling to the slave spirituous liquors; since the Owner gave no consent, that the slave might buy spirits, but only that he should carry the cotton for sale to the defendant.
 

 But we do not think it proper to put the case on that point; since the opinion of the Court is, that in relation to the dealing for the cotton also, the defendant is guilty of the offence created by the Legislature. The act, Rev. Stat. c. 34, sec, 75, & 77, expressly forbids all trading with slaves for the article of cotton and many others; and then, by way of proviso, it makes it lawful in the day time (Sundays excepted) to buy this and some other articles from a slave, if he have a permission in writing from his owner or manager to dispose of the same.
 

 It may be remarked here, in the first place, that, according to the terms of the instruction prayed for, it is certainly erroneous ; since it puts the right of the defendant to an acquittal on the single ground, that the owner of the article sold by the slave gave his consent to the sale, without any reference or regard to the circumstance, that the owner of the slave did or did not give his consent, that his slave might make the sale. Clearly, an authority cannot be given by one person to the slave of another to sell even the goods of the former, so as to exonerate the purchaser from the slave from the penalties of the law. One of the evils of trading with slaves is, the temptation to them to leave their owners’ service, and, breaking their natural rest, to become night walkers and vagabonds. The permission of the owner or manager is, therefore, indispensable to the lawful dealing with a slave, for any article whatever.
 

 
 *249
 
 In this case, indeed, the owner of the cotton and the owner of the slave was the same person; and, therefore, probably the counsel was not more particular as to the terms, in which he prayed the instruction to the jury. But the Court is of opinion, that even in respect to that state of facts, the instructions of his Honor were correct. The effect of the construct" ion, placed on the act for the defendant, would be virtually to strike from it the words “in writing.” Those words constitute a substantive provision of the statute, and they cannot therefore be disregarded; Although the interest of the owner of the slave is one of the matters within the purview of the act, yet it is not the only one. Therefore his consent, merely, will not authorise a person to trade with his slaves. The un-lawtul trading is punishable, both by indictment and by a penalty. Even the penalty is not given to the owner, but to any person suing for it — one half to his own use and the other, half to the wardens of the poor. Hence it is obvious, that the purpose was not merely to protect the owner from practices, which tend to diminish the fidelity and services of his slave, but also to protect the community from such dealings with those persons, as may probably induce them to commit depredations upon others as well as their owners, and render their detection difficult. The trading with slaves is an acknowledged common mischief. Hence, even the consent the owner in writing is not sufficient, to justify the trading with a slave for a forbidden article in the night time. So, the trading bo in the day time, the permission is distinctly required to be in writing. The express provision of the act is decisive of the question. The policy of the act likewise enforces a literal obedience to it. The purposes were to remove all doubt, in every case, upon the question of fact, whether the owner gave his consent to the particular trading, by requiring it to be expressed in writing, and nothing short of it and also to facilitate. ±he" discovery of any petty thefts, by slaves by the readier tracing of their dealings, as specially authorized by a written permission. It intended to deprive a person trading with a slave of all pretext of good motives
 
 *250
 
 or of innocent mistake, in supposing that the slave had the owner’s leave, by laying down as a plain rule, that such li-Gense cap only be given in writing — which is a warning to all who deal with a slave upon any less authority.
 

 It was said, however, in the argument here, that it should have be'en left to the jury to say, whether the slave did not inform the defendant, that his owner h&d sent him to sell and buy for his master; and thence to infer, that he dealt with the slave as the agent of the owper and on the account .of the latter.
 

 It seems otherwise to the Court. For, assuming that the owner may constitute his slave his agent orally, and that one may deal with the slave on the account of the master, yet in this case it was not pretended on the trial, that this was a dealing of that character. No such point was made in the defence. The hour and darkness of the night, the quantity of cotton, the barter for spirits and other circumstances, so plainly pointed to a trading with the slave on his own account, and as for cotton, which he claimed and disposed of as belonging to himself and not to his owner, that the defendant could hardly have expected a favourable finding by the jury on that point; and therefore he did not make
 
 it.
 
 On the contrary, he contended simply, that the trading with the slave, even on the. slave’s own account, was not criminal because the owner’s oral consent made it lawful- His Hqnok, therefore, did not err in omitting to submit to the jury a point of defence, which the accused did not set up for himself-; and especially one, to which ’ there was no evidence, but rather the contrary. If, in truth, thea dealing, in the absence of the owner, purported to be for cotton of the slave or on his, the slave’s, account, as we must take it to have been, the Court is of opinion, that the most direct consent of the owner, whether known or unknown to the party, will not justify it, unless it be given in writing. We' therefore think the con-viction proper.
 

 There was then a motion in arrest of judgment, on the ground of duplicity in the indictment, in charging both the
 
 *251
 
 buying of the cotton and the sale of the spirits in the same count. We should have more approved of an indictment more direct and simple, by laying those acts in different counts; and we must express our regret that such experiments and departures from established precedents should bp attempted. But we believe that, although the indictment is not so creditable to the pleader, as one would have been that conformed to the precedents, it is nevertheless substantially sufficient to authorize judgment. It is laid down by Mr. Archbold, Grim. Plead. 55, that at common law it is extremely doubtful, if duplicity can be made the subject of a motion in arrest of judgment or a writ of error. If so, as a matter of form, the defect must certainly be cured by our Statute of amendments. Rev. Stat. c. 35, s. 12. Bach charge is here expressed in an intelligible and explicit manner, and as the defendant went to trial on it, he is bound by the result. The Court therefore perceives no error in the record.
 

 Per CuRiam, Ordered to be certified accordingly,