Ruffin, C. J.
 

 Upon the question of evidence, and the presumption of the state of a negro from his color, the Court thinks the decision right. In
 
 Scott
 
 v.
 
 Williams,
 
 l Dev. 376, the Court said explicitly, that in this State there
 
 must
 
 be a presumption, that a
 
 black
 
 person is, a slave. That is a presumption, not restricted to actions to try the right to freedom, as peculiarly applicable to them. It is a natural presumption arising out of the color, and the known fact that all persons of
 
 black
 
 complexion, or ne-groes, were originally slaves here; and therefore it is laid on one, who says such a person is
 
 not
 
 a slave,
 
 to
 
 prove it; and this extends to every case, in which the-question, slave or not, arises.
 

 The judgment cannot be arrested ; because, although we think the objection well taken to one of the counts, we hold the other to be good. Taking all the provisions of the act together, the effect of it is, that on Sunday, and also in the night time; it is altogether unlawful to trade with a slave, even with the express permission or order in writing of the owner. It seems to have been the intention of the Legislature, that Sunday should not be desecrated by that species of traffic ; it being probably considered also, that much of the mischief, in point of civil polity, from the trading of slaves, would be provided
 
 *277
 
 against or avoided, by not allowing it on that day, when they are not so much in the service, or under the eye, of the owner. This latter motive led farther to the prohibition of traffic with them in the night time of any other clay; it not being deemed safe to allow them under any pretence to trade between sun-set and sun-rise. The language and grammatical construction of the act, besides the mischief in view, make this the necessary construction. The first enacting clause of the section,
 
 Rev. Stat. ch.
 
 34,
 
 sec.
 
 75, contains a general prohibition in broad terms, from buying, any one of certain enumerated articles from a slave ; and then follows a like prohibition from selling and delivering to a slave any goods or articles of personal property. Then come two provisos
 
 ¡ The
 
 first of which relates to buying any of those forbidden articles from a slave, and
 
 allows
 
 such buying “in the day time, viz. between the rising of the sun and the setting thereof,” Sundays excepted, if the slave have the permis-mission in writing of the owner, &c., to dispose of them.And the second relates to selling to a slave, and
 
 also allows
 
 “in the day time as aforesaid” the sale of any thing in exchange or payment for any articles, which the slave had written permission to sell. Both provisos are ■ expressly restricted to the day time, and do not allow any trading with a slave, except in the day time. The trading with a slave, either in buying or selling, on Sunday or at any time but the day time, as defined in the act, is thus left to the general prohibitory enactment in the beginning of the section- As that enactment forbids all trading, without any qualification as to-the owner’s permission or any other whatever, and the provisos, which introduce- such qualification, are expressly limited to “the day time,” it follows when the indictment charges- a trading in the night time, it takes the- ease- out of the operation of the provisos altogether, and states a case in which the
 
 corpus delicti,
 
 as enacted by the act, is complete- There is nothing else to be added. Being in the
 
 *278
 
 night time, it is, no part of
 
 that
 
 offence, that it was done without the permission of the owner ; for the permission, if given, would not prevent the act from being a crime, and therefore it need not. be negatived. This conclusion is not affected by the exception in the second proviso — “always excepting spirituous liquors, fire arms, powder, shot, or lead, unless these articles be for the owner or employer of such slave, or by the order of the owner or person-having the management of the same.” From its nature as an exception, it only takes those articles out of the operation of the proviso, to which it is an exception ; and therefore, the office of it here is, to regulate the sale and delivery of those articles in the day time, and it has no application to a sale of them in the night.
 

 That exception, however, as we think, makes it necessary, in an indictment for selling'or delivering spirits to. a slave in the day time, to aver, that it was not
 
 for
 
 the' owner,
 
 or by Ms order.
 
 The object of the exception is obvious, standing as an exception to the second proviso.. That proviso, does not require that the written permission of the owner should specify the articles
 
 wMch maybe sold
 
 to' a slave
 
 \
 
 but it allows “any goods” to be sold to him in exchange or payment for any of the articles, which the-owner’s permission (as mentioned in the preceding proviso) authorised the slave to sell in the day time. The office of the exception veas, in respect to the articles mentioned in if,- to qualify that general permission to sell “ any goods,” by making it necessary, not only that the-owner’s permission should specify what the negro might sell, but also that it should be specified, that he might purchase or take in exchange these articles, to-wit: spirits, fire arms, &c. The meaning, then, is, that there must be an express direction or written order of the owner or manager for these articles, as the only justification for letting a slave have them in the day time. But with such an order they may be sold to the slave or delivered for the owner in the day. The question then is, further,
 
 *279
 
 whether an indictment for such a sale must negative the delivery for the owner, and the written order of the owner or person having the management of the slave. We think, it must. It is true, there is a distinction between an exception in the enacting clause, and a separate proviso ; the rule being, that the former must be negatived.; and that the latter need riot, but is matter of defence.
 
 Steel
 
 v.
 
 Smith,
 
 1 Bam. & Ald. 95. And it may possibly be, that as to purchases from slaves in the day, an indictment need not charge more than the buying of a prohibited article, which would be
 
 'prima facie
 
 unlawful; leaving to the defendant to shew the authority. However that may be, and we give no opinion on it, we think an indictment for selling these particular articles in the day time must negative the excuse, allowed by the exception for such a sale. The frame of the act is peculiar. What is said about spirituous liquors, fire arms, &c. is, in. itself an important enactment also, in so far as it requires that, as to those articles, there should be a written permission, not only that the slave might sell the things for which these things were given, but also that the writing Should expressly authorise the sale to the slave of these particular articles or their delivery to him for the owner. It amounts to an express prohibition against the sale of these articles, by name,
 
 unless
 
 the slave be permitted in writing to buy
 
 them or to
 
 take
 
 them
 
 for his owner. As
 
 to
 
 them, the exception, “ unless &c.” is so mixed up with the description of the offence, and in the same sentence that the one cannot be read without the other ; and therefore according to the general rule, the description must bring the case within both the affirmative and negative words of the enactment. Here, that has not been done. The first count does not charge the sale to have been in the night, and we cannot assume that fact, without an allegation of it. As an indictment for selling in the day,: at is defective, because it does not negative
 
 an order
 
 of the owner or manager, as well as a delivery
 
 for
 
 the owner.
 

 
 *280
 
 But as one of the counts is good and the judgment is such as may lawfully be given on that, it cannot be declared erroneous, as has long been settled.
 

 Pur CtiRiAM. Judgment affirmed.