FRANCIS WINSLOW v. GEO. L. MORTON.

*Constitution of U. S., Art.* II., *Sec.* 2 ; *State Constitution Art.* III., *Sec.* 8 ; *Art.* XII., *Sec.* 3—*Governor's Powers as Commander-in-Chief—Removal of Officers of State Militia—Construction of Statutes—Repealing Statutes by Implication—Statutes in Pari Materia—The Code, Sec.* 3268, *Laws* '93, *Ch.* 374–399.

1. Under the Constitution of this State, Art. III., Sec. 8, and Art. XII., Sec. 3, the Governor is made Commander-in Chief of the *militia*, *except when it is called into the service of the Federal Government*, and his control is supreme in the absence of legislation "to provide for the organization," &c., of the militia, enacted pursuant to Art. XII., Sec. 8.

2. The Legislature can provide for the organization, arming, equipping and discipline of the militia, and when it passes laws of that character the powers of the Governor, as Commander-in-Chief, are limited *pro tanto*, and he is charged, as the head of the executive department, with the duty of executing such laws.

WINSLOW *v.* MORTON.

3. As incidental to his office of Commander-in-Chief the Governor has the constitutional power, in the absence of legislation to the contrary, to remove an officer of the militia and dismiss him from the service.

4. *The Code*, Sec. 3268, is in affirmance of the Constitution and confers upon the Governor the power to dismiss and remove officers of the militia; and this power is not interfered with by Chapters 374 and 399 of the Laws of 1893.

5. These rules of law for the construction of statutes are well established: (1.) The law does not favor the repeal of an older statute by a later one by mere implication. (2.) The implication which will work the repeal of a statute must be necessary, and if it arises out of repugnancy between the two acts, the later act abrogates the older only to the extent that it is inconsistent and irreconcilable with it. A law will not be deemed repealed because some of its provisions are repeated in a subsequent statute. (3.) Where a later or revising statute clearly covers the whole subject-matter of antecedent acts, and it plainly appears to have been the purpose of the Legislature to merge into it the whole law on the subject, a repeal by necessary implication is effected.

6. The courts construe any statute in derogation of common-law or of common right strictly, and upon the same principle prefer to interpret successive statutes as *in pari materia*, and give effect to all, in so far as they are reconcilable one with another.

7. The naval force, provided for by Ch. 399, Laws of 1893, is part of the State militia and subject to the same regulations.

8. The authority of the President of the United States, as Commander-in-Chief of the army and navy of the United States, and of the militia of the several states, discussed.

CIVIL ACTION, heard by *Starbuck, Judge*, in March, 1896, *at Chambers*, in Wilmington, NEW HANOVER County, upon a notice to show cause why a restraining order should not be granted. The motion was heard upon the complaint and demurrer thereto.

WINSLOW *v.* MORTON.

The action was brought to enjoin the publication by the defendant, as lieutenant-commander, of an order from the Governor, as Commander-in-Chief of the militia, revoking a commission held by the plaintiff, as commander of the naval battalion of the State guard, the plaintiff denying the power of the Governor to issue such order without trial before a court-martial.

Defendant demurred to the complaint, for that it does not state facts sufficient to constitute a cause of action : (1) Because the Governor had in law, as Commander-in-Chief, the power to revoke plaintiff's commission ; (2) because the action is not a proper one for injunction, for if the order was void the plaintiff is still in office, but if ousted he could try his title by an action in the nature of a *quo warranto*.

The demurrer was sustained, the motion for a restraining order denied, and plaintiff appealed.

*Messrs. Ricaud & Weill* and *George Rountree*, for plaintiff (appellant).

*The Attorney General* and *Messrs. Battle & Mordecai*, for defendant.

AVERY, J. : The Constitution of the United States provides (Art. II., Sec. 2) that " the President shall be Commander-in-Chief of the army and navy of the United States and of the militia of the several states when called into actual service of the United States." The Constitution of North Carolina (Art. III., Sec. 8, and Art. XII., Sec. 3) constitutes the Governor of the State Commander-in-Chief of the militia except when they are called into the service of the Federal Government, and confers upon him the power to call them out " to execute the law, suppress riots or insurrection and to repel invasion." While the two provisions supplement each other so as to prevent col-

lision when the Chief Executive of the United States calls the militia of the State into actual service, the authority conferred, as incident to the office of Commander-in-Chief, leaving other constitutional provisions out of view, is substantially the same, when either is actually controlling land or naval forces within his own province.

The President, as the constituted head of the military establishment, has the implied power to regulate the disposition of armies and to direct the movements of the navy. So long as Congress refrains from the exercise of its authority to make rules for the government of the land and the naval forces, it has been conceded that the control of the President is supreme, within the sphere of his office, and limited only by the well-defined boundary fixed for the protection of individual liberty and security. Neither the President nor Congress nor the Judiciary can disturb any of the safe-guards of civil liberty. Ordronaux Con. Leg., p. 108. " But Congress may under the Constitution, not only provide for raising, equipping and maintaining armies and navies, but may make rules for the government of the land and naval forces. When Congress asserts its authority to the extent that it acts within the purview of its powers, the President is deprived of the supreme power of military head of the government, and in lieu of his right to exercise it incurs the obligation as Chief Executive to see that the laws made by the legislative branch of the government are faithfully executed." Black's Const. Law, p. 96.

So, the Constitution of North Carolina (Art. XII., Sec. 2) having authorized the Legislature " to provide for the organization, arming, equipping and discipline of the militia," where it passes an act in pursuance of this Section, imposes *pro tanto* a limit upon the incidental authority of the Governor as Commander-in-Chief, and

charges him, as the constituted head of the executive department (Art. III., Sec. 1) with the duty of seeing that the statute is carried into effect.

It appears therefore that by the terms of both the Federal and the State Constitution the executive heads of the two governments are constituted commanders of the military forces, by using substantially the same words, and that the grant of authority to the legislative departments is expressed, in the two instruments, in language almost identical. It follows that in time of peace the right of the President to remove officers of the regular army, in the absence of all statutory regulation by Congress, must be precisely the same as that of a Governor to dismiss officers of the militia when his powers and duties are not defined by any legislative act. It seems to have been settled by numerous authorities that the President may, in the absence of express prohibitory legislation by Congress, dismiss an officer from the service in order to promote the efficiency of the army or navy. *Blake* v. *U. S.*, 103 U. S., 227, 232; *Keyes* v. *U. S.*, 109 U. S., 336; *Black, supra*, p. 96, note; *McElrath* v. *U. S.*, 102 U. S. 426.

The statute (*Code*, Sec. 3268) was in affirmance of the Constitution in so far as it purported to clothe the Governor as Commander-in-Chief with the authority already vested in him to revoke any commission * * * whenever in his judgment it shall be necessary or expedient for the public good or for the good of the service. The power to dismiss, being conferred by the constitutional provision and affirmed by statute, it is clear that the Governor may still lawfully exercise it unless the legislature, by virtue of its authority to organize and discipline the militia, has either expressly or by implication repealed the statute.

It is provided by Section 24, Chapter 374, of the Laws

of 1893, that "a commissioned officer may be honorably discharged upon tender of resignation, upon disbandment of the organization to which he belongs, upon the report of the board of examination, or for failure to appear before such board when ordered." It was further provided in the same section that "he may be dismissed upon the sentence of a court martial, or conviction in a court of justice of an infamous offence." Another section of the same act (Section 18) authorizes "the Commander-in-Chief to disband a company and grant honorable discharges to its officers and men, where for ninety days it is found to contain less than the minimum number of enlisted men, or where upon inspection it is found to have fallen below a proper standard of efficiency."

The only remaining question is whether the older statute (*Code*, Sec. 326$) is by implication repealed by either Chapter 374 or Chapter 399 of the Laws of 1893. The plaintiff does not contend that there is any express repealing clause in either. The courts have universally given their sanction to the rules of construction : 1. That the law does not favor a repeal of an older statute by a later one by mere implication. *State* v. *Woodside*, 8 Ired., 104 ; *Simonton* v. *Lanier*, 71 N. C., 498. 2. The implication, in order to be operative. must be necessary, and if it arises out of repugnancy between the two acts, the later abrogates the older only to the extent that it is inconsistent and irreconcilable with it. *Wood* v. *U. S.*, 16 Peters, 363 ; *Chem Hiong* v. *U. S.*, 112 U. S., 549 ; *City of St. Louis* v. *Independent*, &c., 17 Mo., 146. A later and an older statute will, if it is possible and reasonable to do so, be always construed together, so as to give effect not only to the distinct parts or provisions of the latter, not inconsistent with the new law, but to give effect to the older law as a whole, subject only to restrictions or modifica-

tions of its meaning, where such seems to have been the legislative purpose. Southerland on Stat. Construct., Sec. 158. A law will not be deemed repealed because some of its provisions are repeated in a subsequent statute, except in so far as the latter plainly appears to have been intended by the legislature as a substitute. *Chicago, &c., R. Co.* v. *U. S.*, 127 U. S., 466; *State* v. *Stolt*, 17 Wallace, 425; *Longlois* v. *Longlois*, 48 Mo., 60; *Casey* v. *Harned*, 5 Clarke, (Iowa,) 1; *State* v. *Custer*, 65 N. C., 339; *Code*, Sec. 3766; *Brietung* v. *Lindoner*, 37 Mich., 217; *Trinity Church* v. *U. S.*, 457. 3. Where a later or revising statute clearly covers the whole subject-matter of antecedent acts and it plainly appears to have been the purpose of the Legislature to give expression in it to the whole law on the subject, the latter is held to be repealed by necessary implication. Matter of N. Y. Institution, 121 N. Y., 234; *U. S.* v. *Lineu*, 11 Wallace, 88; *Jernigan* v. *Holden*, 34 Fla., 530.

The Legislature by the Act of 1876–7 (*Code*, Sec. 3268) reaffirmed the Governor's right as Commander-in-Chief to revoke commissions and disband companies in the exercise of a sound discretion " for the public good or the good of the service." Are the Acts of 1893 repugnant to the provisions of *The Code?* If not, is there anything in either (Ch. 374 or Ch. 399 of the Laws of 1893) that plainly manifests the purpose of the Legislature to substitute the new acts for the pre-existing statute? These are the questions upon which the controversy depends.

The section of *The Code* then in force clothed the Governor with power to disband companies or to revoke commissions where he deemed it best for the service or the public interest, but Section 18, Chapter 374 of the Laws of 1893, clothed him with authority to act upon the report of an inspection made by the proper officer, and order that

a company be disbanded, and men and officers be honora-
bly discharged where they did not appear to have come up
to a standard of efficiency set up by a staff officer, or to
have kept the number of enlisted men above the minimum
prescribed. Clearly the right to exercise such a general
discretion is not inconsistent with the legislative declara-
tion that certain conditions may justify the exercise of the
same power in special cases and under given circumstances,
without regard to the views of the agent entrusted by the
government with the authority. So, the provision in Sec-
tion 24 of the same chapter that a commissioned officer
may be honorably discharged on tender of his resignation,
upon the report of the board of examination, or for failure
to appear before such board, is not irreconcilable with the
prior statute, for the reason that the Governor might, before
the passage of the later act, have refused to accept the
resignation of an officer, or, upon an unfavorable report of
the board or upon failure to appear before such board,
might have declined to revoke his commission on
the ground that he did not believe the public interest or
the good of the service called for the exercise of his author-
ity. The two statutes can stand and be construed together
as vesting in the Governor the right to revoke commissions
on special grounds without regard to his opinion as to
consequences or for any reason outside of the cases enum-
erated, where he may think it best for the service. Look-
ing at all of the provisions of the two acts, which refer
to each other and were intended to be enforced together,
we see nothing to indicate a purpose to substitute the
two chapters as a whole for the law previously in force.
The courts construe any statute in derogation of the com-
mon-law or of common right strictly, and upon the
same principle prefer to interpret successive statutes as *in
pari materia,* and give effect to all in so far as they are

·reconcilable one with another.  It is  manifest that the Legislature intended that the naval force, which might be ·organized under Chapter 399 of the Laws of 1893, should constitute a part of the State militia and should be subject ·to the same regulations previously prescribed for the land forces.   Neither the provision for the election of the bat-·talion or company officers nor for the appointment of staff ·officers is inconsistent with the intent on the part of the Legislature to allow the chief officer of all the forces to exer-·cise the power given him by the Act of 1876–'7.  On the ·contrary, the discipline of the naval forces, by the express ·terms of the last act, was required to "conform as closely ·to that of the land forces of this State as the difference ·in the two services will allow."  If therefore under a proper·construction of the Act of March 12th (Ch. 374) the ·Governor was not divested of the power to revoke com-missions of officers in the land forces, there is no reason why he should not have conformed to the rules applicable to the land forces in dealing with the naval officers.  It was not contended that the Governor revoked the commis-·sion of the plaintiff for reasons that affected his character as a man or his general efficiency as an officer.  It is ordi-narily essential to the success of efforts to train and dis-·cipline troops that there should be harmony and concerted action on the part of the higher officers entrusted with the ·duty.  If, as we gather from the argument, the Com-mander-in-chief and the commander of all the naval forces had disagreed as to methods or discipline, and such dis-·agreements had made their relations unpleasant, it was natural that the chief officer should act upon the idea that ·the naval forces would prove more efficient if the command ·should be entrusted to one in touch both in thought and purpose with his superior.  For the reasons given the ·demurrer was properly sustained.

If the Governor could lawfully revoke the commission of the plaintiff, the latter has no cause of action at all. It is therefore unnecessary to follow counsel in the discussion of the question whether, if the plaintiff had suffered an injury for which he would have. been entitled to redress, his remedy would have been an action at law, pure and simple, or whether he might have invoked the equitable jurisdiction of the court by demanding an order enjoining the defendant as lieutenant-commander from exercising the authority of commander. The judgment is affirmed.

Affirmed.