AGRICULTURAL AND MECHANICAL COLLEGE v. B. R. LACY,
STATE TREASURER.

(Filed June 17 1902.)

STATUTES—*Repeal by Implication—Acts 1891, Chap. 549—Acts
1893, Chap. 252—Acts 1895, Chap. 146—Acts 1897, Chap. 486—
Acts 1901, Chap. 737.*

Acts 1895, Chap. 146, do not repeal Acts 1891, Chap. 549, Sec. 110,
relative to the appropriation of money for the Agricultural
and Mechanical College for the Colored Race, as they are not
repugnant or inconsistent.

CLARK and MONTGOMERY, J.J., dissenting.

ACTION by the Board of Trustees of the Agricultural and
Mechanical College for the Colored Race against B. R. Lacy,
State Treasurer, heard by Judge *Thos. J. Shaw,* at December
Term, 1901, of the Superior Court of GUILFORD County.

The facts stated in the controversy without action are as
follows:

I. That the General Assembly of the State of North Caro-
lina, during the session of 1891, passed an act, reference being
made to the entire act, known as "An act to establish an Agri-
cultural and Mechanical College for the Colored Race," being
Chapter 549 of the Acts of 1891, the material portion of
which, pertinent to this controversy, being embraced in Sec-
tion 10 of said act, and is in the following words, to-wit:

"That for the purpose of carrying out the provisions of this
act, the sum of $2,500.00 is hereby annually appropriated to
the said college, and the Treasurer of the State is hereby au-
thorized and directed to pay the said amount out of any funds
in the treasury not otherwise appropriated upon the warrant
of the Board of Trustees or such other officer or officers as the
board may designate."

II. That the General Assembly of the State of North Caro-

lina, during its session of 1893, passed an act known as Chapter 252 of the Acts of 1893, which is in the following words:

"That the sum of $5,000.00 per year for the years 1893 and 1894 is hereby appropriated from funds in the public treasury of this State not otherwise appropriated, for the purpose of completing, erecting and furnishing said buildings for the use of the North Carolina Agricultural and Mechanical College for the Colored Race."

III. That the General Assembly of the State of North Carolina, during its session of 1895, passed an act known as Chapter 146 of the Acts of 1895, which is in the following words:

"That the sum of $5,000.00 annually be and is hereby appropriated for the support, maintenance, equipment, enlargement and extension of the North Carolina Agricultural and Mechanical College for the Colored Race, to be paid on the first days of April and October of each year out of funds in the treasury not otherwise appropriated."

IV. That the General Assembly of the State of North Carolina, during its session of 1897, passed an act known as Chapter 486 of the Acts of 1897, which is in the following words:

"That the sum of $5,000.00 be and the same is hereby appropriated for the maintenance and equipment of the Agricultural and Mechanical College for the Colored Race for each of the years 1897 and 1898, to be in installments of $2,500.00, on the first days of April and October of each year 1897 and 1898."

V. That the General Assembly of the State of North Carolina, during its session of the year 1901, passed an act known as Chapter 737 of the Acts of 1901, the material portion of which pertinent to this controversy is embraced in Section 7 thereof, and is in the following words:

"That $5,000.00 be appropriated to the Colored Agricul-

tural and Mechanical College, of Greensboro, for each of the years 1901 and 1902, in addition to its standing appropriation. This appropriation shall not be paid if the said Board of Education shall transfer to said schools an equal amount of the appropriations for the Colored Normal Schools of the State."

VI. That the Board of Education has not transferred to said school an equal amount of the appropriation for the Colored Normal Schools of the State.

VII. That the foregoing embraces all the acts granting appropriations to the said Agricultural and Mechanical College for the Colored Race since its institution, in the year 1891, by the State of North Carolina.

VIII. That from and after the date of the appropriation made by the General Assembly during its session held in the year 1895, the Treasurer and the Auditor of the State of North Carolina have construed the standing appropriation to the said institution to be $7,500.00 annually, and this sum has been paid to the said institution annually as a standing appropriation.

IX. That the Treasurer and Auditor of the State of North Carolina have construed the act of 1897 hereinbefore set out as a special appropriation to the said Agricultural and Mechanical College for the Colored Race, to be paid it in addition to its standing annual appropriation of 1891 and 1895.

X. That the construction placed upon said acts by the said State Treasurer and the Auditor of the State of North Carolina was reported to the Governor of said State by the Auditor in his annual reports, showing the amounts paid out each year, and the Governor in turn transmitted these as a part of his biennial message to the General Assembly for their consideration during the years 1897, 1899 and 1901.

XI. That since the year 1895 the Treasurer of the State of North Carolina has paid to the said institution the sum of

$7,500.00 annually as its standing appropriation, $2,500.00 of which has been paid at the beginning of the fiscal year, which said fiscal year begins on December 1st, $2,500.00 being paid on the first day of April, and $2,500.00 on the first day of October, and that the former Treasurer has paid to the said Agricultural and Mechanical College the sum of $2,500.00 as a part of its appropriation for the year 1901. That the $2,500.00 warrants issued by the Treasurer, during the year 1898, aggregating the sum of $12,500.00, cited as authority for their issuance Laws of North Carolina, Acts 1891, 1895 and 1897. That the $2,500.00 warrants issued by the Treasurer during the year 1899, aggregating the sum of $7,500.00, cited as authority for their issuance Laws of North Carolina, Acts 1891 and 1895, and that the warrant issued on December 1, 1900, for the year 1901, cited as authority for its issuance Laws of 1895.

XII. That by virtue of the Act of 1895, the payments thereunder were to be due and payable on the first days of October and April of each and every year, and the said payment due thereunder on the first day of April has been paid, but that on the first day of October, 1901, the Treasurer of the Board of Trustees of the Agricultural and Mechanical College for the Colored Race demanded of the Treasurer of the State of North Carolina the remaining sum of $2,500.00 due on said date as aforesaid, which said sum the said Treasurer of the State of North Carolina refused to pay.

That the points of difference between the parties plaintiff and the party defendant are as follows:

(a) The Board of Trustees of the Agricultural and Mechanical College contend that the act of 1895 was merely cumulative, making the standing appropriations of the Agricultural and Mechanical College for the Colored Race $7,500.00.

(b) That the Treasurer of the State of North Carolina has

not the legal right to withhold a sum the payment of which is admitted to be authorized under the Acts of 1895 to offset a payment made by his predecessor in office, which he, the present Treasurer, believes to have been paid under wrong construction of law.

On the other hand, the Treasurer of the State of North Carolina contends—

(c) That the act of the General Assembly passed during its session of the year 1895 repealed the act of 1891 by implication, and that the standing appropriation to the said Agricultural and Mechanical College for the Colored Race is only $5,000.00 per annum.

(d) That the former Treasurer having made a payment of $2,500.00 at the beginning of the fiscal year, to-wit, December the 1st, 1900, under a misconstruction of the law, that his successor has the right to retain this sum out of an appropriation which is admitted to be authorized under the act of 1895.

Upon said facts, his Honor rendered judgment in favor of plaintiff, holding that the act of 1895 was cumulative, and defendant appealed, assigning as error the findings of the Court "(1) That the act of 1895 was simply cumulative, and that the standing annual appropriation for the Agricultural and Mechanical College for the Colored Race is $7,500. (2) That the Treasurer of the State has not the legal right to withhold the sum of $2,500, authorized under the Acts of 1895, to offset a payment made by his predecessor in office, paid under the wrong construction of the law. (3) The signing of the judgment for $2,500 and costs against the defendant." From judgment for the plaintiff, the defendant appealed.

*J. N. Wilson* and *Z. V. Taylor,* for the plaintiff.

*Robert D. Gilmer, Attorney-General,* and *Shepherd & Shepherd,* for the defendant.

Cook, J., after stating the case. Was Section 10 of Chapter 549, Acts of 1891, repealed by Chapter 146, Acts of 1895 ? This is the issue raised by the facts agreed and presented for our decision by the case on appeal. Defendant contends that while the repeal is not in express terms, yet it is by necessary implication. This contention is handicapped in the outset with the presumption against it. A statute will not be construed as repealing a prior one on the same subject (in the absence of express words to that effect) unless there is an irreconcilable repugnancy between them, or unless the new law is evidently intended to supersede the prior one upon the subject and to comprise in itself the sole and complete system of legislation on that subject. Black on Interpretation of Laws, page 112; Endlich on Interpretation of Statutes, Sec. 210; Sutherland on Statutory Construction, Sec. 138. The two acts now being construed being *affirmative,* and the subject being such that both may stand together, they both should have concurrent efficacy (1 Blk., 90), unless they be repugnant or inconsistent, or it should appear that the Legislature intended to cover the whole subject embraced in both and to prescribe the only rule in respect of that subject in the later act. *State v. Davis,* 129 N. C., 570.

Bearing in mind this rule of construction, a careful perusal of the act (Chapter 549, Acts 1891) creating and incorporating the plaintiff college, and construing the subsequent acts by which appropriations of money were made for its use, with reference to it, leads us to the conclusion that it was not intended by the Legislature to repeal any provision therein made.

The general purpose for which it was created, the duties imposed upon its Board of Trustees, and the expenses necessary and incidental to its management, clearly show that the sum of twenty-five hundred dollars therein annually appro-

priated was intended for organization expenses "in carrying out the provisions of this act," and not for the general purpose of supporting, maintaining and developing the institution. Its management and control, and the care and preservation of all its property, are vested in the Board of Trustees. For their services they "are entitled to the same per diem and mileage as compensation for attendance upon the meetings of the Board as are now allowed by law to the members of the General Assembly." (This compensation was changed by Chapter 389, Acts 1899, to travelling expenses and hotel fare.)

There is imposed upon them the power of prescribing rules for the management and preservation of good order and morals, the appointment of its president, instructors and other officers, servants, etc., to fix salaries, have charge of the disbursement of funds, and to have general and *entire* supervision of the *establishment and maintenance,* to receive any donation of property, real or personal, and to *invest* or expend the same for the benefit of the college, to locate the college, to make temporary provision pending the furnishing of the site, buildings, etc. For none of these expenses do we find any provision made in any of the subsequent acts. The act of 1893 appropriated $5,000 per year for 1893 and 1894, "for the purpose of completing, erecting and furnishing said buildings." The act of 1895 appropriated $5,000 annually "for the support, maintenance, equipment, enlargement and extension, * * * to be paid on the first days of April and October of each year." The act of 1897 appropriated $5,000 "for the maintenance and equipment * * * for each of the years 1897 and 1898, to be paid in instalments of $2,500 on the first days of April and October." The act of 1901 appropriated $5,000 "for each of the years 1901 and 1902, in addition to its standing appropriation, * * * if the Board of Education shall transfer," etc. (which has not been done).

The *entire* act of 1895 is quoted in the case (except the enacting and ratification clauses). It has no repealing clause; it makes no reference to the organic act; it makes no provision for the necessary organization expenses; it appoints specific days (first days of April and October) for the payments of its appropriations, while payments of the other appropriation (in common with others of like kind) are made with reference to the beginning of the fiscal year, December 1.

If it was the intent of the Legislature of 1895 to appropriate $5,000 annually for the purpose therein declared, *in addition* to the amount appropriated in the organic act, then it has done so clearly and without doubt. But if it intended to make this to cover and in substitution for and to repeal the other, then we fail to find any expression or suggestion to indicate such intent. There is no revisal of the organic act. The two acts are not inconsistent or repugnant, but are in harmony. The former would be totally inadequate to meet the future needs of the institution, and the latter makes no provision for paying the Trustees for their services, nor for other necessary expenses in managing its affairs. Its rapid growth and increasing needs are shown by the *special* appropriation of $5,000 per annum for each of the years 1893, 1894, 1897 and 1898 for completing, erecting and furnishing the buildings, maintenance and equipment, and also the one for 1901 and 1902 "in addition to its standing appropriation."

With this increase of property and progress in promoting one of its institutions of learning and usefulness, accompanied with a like increase of responsibilities and cares, we would not be justified in holding that the Legislature intended to deprive it of that sum of money, which it had provided for carrying out the provisions of the act in preserving and caring for its property, and in utilizing beneficially the

means obtainable in giving force and effect to the aims and purposes for which the institution was created. We find no error in the ruling of his Honor in holding that the appropriation made under the act of 1895 was auxiliary, or in addition to the sum appropriated by Section 10 of the act of 1891, and the judgment is

Affirmed.

Montgomery, J., dissenting. A strong sense of duty after a careful investigation of the matter in dispute, compels me to dissent from the opinion of the Court. If I had a reasonable doubt on the question involved, I would gladly acquiesce in the conclusion arrived at by the Court, but to my mind the error in the judgment of the Court below is so clear that I am forced to say so for myself.

The plaintiff institution owes its existence to Chapter 549 of the Acts of 1891. An annual appropriation was made, under that act, of $2,500, "for the purpose of carrying out the provisions of the act." It is enacted in Section 3, "That the leading object of the institution shall be to teach practical agriculture and the mechanic arts and such branches of learning as relate thereto, not excluding academical and classical instruction." There was at the time not a foot of ground for a building of any kind that belonged to the college, nor was there any authority conferred on the Board of Trustees to purchase a site. In fact, it was made the duty of the Board of Trustees to receive propositions from the various localities of the State offering inducements for the locating of the college, in the shape of gifts of land or money. In the meantime, and until the site and buildings should have been furnished for the location of the college, the Board of Trustees were authorized to make temporary provision for the industrial and mechanical education of the colored youth of the State at some established institution of learning within the State.

The General Assembly, at its session of 1895, Chapter 146, made an annual appropriation, the language of the act being as follows: "That the sum of $5,000 annually be and is hereby appropriated for the support, maintenance, equipment, enlargement and extension of the North Carolina Agricultural and Mechanical College for the Colored Race, to be paid on the first days of April and October of each year, out of the funds of the treasury not otherwise appropriated."

The Legislature, at its session of 1901, Chapter 737, made an annual appropriation for this institution of $5,000, "in addition to its standing appropriation."

What was its standing appropriation? Beyond question, ir. my opinion, the $5,000 appropriated by the act of 1895. The act of 1895 was an implied repeal of the act of 1891, in so far as the amount of the appropriation was concerned. The law, it is true, does not favor implied revocations; but whenever a statute in a different manner makes provision for the same thing provided for in a former statute, the former statute is repealed. Every affirmative statute is a repeal by implication of a prior affirmative statute so far as it is contrary to it. *State v. Woodside*, 31 N. C., 496. The amount appropriated annually in the act of 1891 was $2,500; the amount appropriated annually in 1895 was $5,000—both having been for the same purpose in different amounts—the last act repeals the first. I can not agree in the statement in the opinion of the Court that the amount—$2,500—of the appropriation under the act of 1891 was intended for "organization expenses" in carrying out the provisions of the act. The only expense of organization that could have arisen under the act of 1891 was that of the per diem of members of Board of Trustees on account of meetings of the Board of Trustees. The appropriation, as we have seen, was to be used in the education of the colored youth of the State at some established institution of learning within the State, until the

site and buildings should be furnished. The buildings were provided by appropriation for that special purpose by the act of 1893, Chapter 252, of $5,000 for each of the years 1893 and 1894. The act of 1895 embraces the same objects and purposes of the act of 1891—the support and maintenance of the college, as well as an additional amount for the equipment, enlargement and extension of the college.

For these reasons I think there was error in the judgment of the Court below.

CLARK, J., concurs in the dissenting opinion.