## STATE v. PERKINS.

(Filed April 3, 1906.

*Intoxicating Liquors—Statutes—Repugnancy—Repeal—Effect Upon Pending Prosecutions.*

1. Where a statute prescribing the punishment for a crime is expressly and unqualifiedly repealed after such crime has been committed, but before final judgment, though after conviction, no punishment can be imposed.

2. Chapter 497, Laws 1905, which enacts that the sale of liquor "shall be" prohibited in Union County and provides that all laws and clauses of laws in conflict with the act are repealed, and that the act shall take effect June 1, 1905, is prospective in its operation and applies only to sales after June 1, 1905, and does not repeal chapter 434, Laws 1903, prohibiting the sale of liquor in said county, as to sales made prior to June 1, 1905.

3. Repeals by implication or construction are not favored, and they should not be extended so as to include cases not within the intention of the Legislature.

4. The repeal in any case will be measured by the extent of the conflict or the inconsistency between the acts, and if any part of the earlier act can stand as not superseded or affected by the later one, it will not be repealed.

INDICTMENT against Richard Perkins, heard by *Judge G. S. Ferguson* and a jury, at the November Term, 1905, of the Superior Court of UNION.

The defendant was indicted in one count for selling and in the other for keeping for sale liquor, without having a license, as provided by law, and was convicted. The offense was committed in the year 1904 and the indictment was found at July Term, 1905. The defendant requested the court to charge the jury that, as the offense was committed, if at all, prior to June 1, 1905, the defendant should be acquitted, and he moved to quash the bill and to arrest the judgment

upon the same ground. The instruction and the motions were all refused and the defendant excepted. There was a judgment upon the verdict and the defendant appealed.

*Robert D. Gilmer, Attorney-General,* for the State.
*A. M. Stack* for the defendant.

WALKER, J., after stating the case: The ruling of the court was in all respects correct. The indictment was drawn under chapter 434 of the Laws of 1903 prohibiting the sale of liquor in Union County, or the keeping of it for sale, without a license. By chapter 497 of the laws of 1905, it is enacted that the sale of liquor and the keeping of it for sale "shall be" prohibited, with certain exceptions not necessary to be stated. There is no clause in the latter act unqualifiedly repealing prior enactments upon the same subject, but by sections 26 and 27 it is provided that all laws and clauses of laws in conflict with the act are repealed, and that the act shall be in force and take effect from and after the first day of June, 1905. The decision of this case must, therefore, turn upon the question whether the Act of 1903 is repealed by the Act of 1905 to the extent of defeating this prosecution against the defendant.

Where a statute prescribing the punishment for a crime is expressly and unqualifiedly repealed after such crime has been committed, but before final judgment, though after conviction, no punishment can be imposed, because the act must be punishable when judgment is demanded, and authority to pass sentence must then reside in the court. This is the well-settled principle, and it is essential in order to give effect to the clear intention of the Legislature and to require that the decision and judgment of the courts shall be based upon existing law. *State v. Cress,* 49 N. C., 421; *State v. Nutt,* 61 N. C., 20; *State v. Long,* 78 N. C., 571; *State v. Massey,* 103 N. C., 356; *State v. Biggers,* 108 N. C., 760;

26 Am. & Eng. Enc. (2 Ed.), 755. The rule is so familiar and well grounded in reason that we need not stop to discuss it further, except to say that it necessarily relates to an unqualified and express repeal, in the view we take of it, as to its effect upon pending prosecutions for offenses committed under the prior statute before the repeal, or upon prosecutions for such offenses afterwards instituted. As thus considered, it has no application to the facts of this case, for the Act of 1905 does not expressly and unqualifiedly repeal the Act of 1903, but repeals only to the extent that it conflicts with it. If the Legislature had intended to repeal the Act of 1903 absolutely, it was easy to have expressed that intention in words of unmistakable meaning, but it preferred not to do so, but to repeal it only so far as it is repugnant to the provisions of the later statute. The Act of 1905 is by its very language prospective in its operation. It refers to sales made after the 1st of June, 1905, when it became effective, and could not under our Constitution apply to antecedent acts, so as to make them criminal or punishable if not so at the time they were committed. If it, does not affect prior acts which are covered only by the earlier statute, how can it be said to conflict with the latter as to those acts. There can be no repugnancy except as to offenses which are punishable under the later statute, and as to these the earlier act is repealed and has no further operation. Repeals by implication are not favored, and they should not be extended so as to include cases not within the intention of the Legislature. The Act of 1905 forbids the sale of liquor and prescribes a much greater punishment than that fixed by the Act of 1903 for selling liquor without a license, and its general features clearly indicate a purpose on the part of the Legislature to adopt more drastic measures for the suppression of the liquor traffic. Can it be reasonably supposed that with this object in view and in its then frame of mind, it designed to extend pardon and forgiveness to those who had violated the

provisions of the former act? Why should we come to such
a conclusion and give to the repealing clause of the Act of
1905 the same meaning we would to words of unqualified
repeal, which is so much at variance with the declared will
of that body? Will it not be more reasonable and more
likely to effectuate the intention of the Legislature if we hold
that the Act of 1903 is still in force as to offenses already
committed when the Act of 1905 took effect, and to confine
the latter act to its proper and legitimate sphere by applying
it to offenses thereafter committed? This brings the two acts
into harmonious operation by repealing the former act so far
as it conflicts and leaving it in full effect where it does not
interfere with the full operation of the other act. There is
abundant authority, we think, for this construction. Coke
says: "It must be known that for as much as acts of parlia-
ment are established with gravity, wisdom and universal con-.
sent of the whole realm for the advancement of the common-
wealth, they ought not, by any constrained construction out
of the general and ambiguous words of a subsequent act, to
be abrogated, but ought to be maintained and supported with
a benign and favorable construction." *Dr. Foster's case,* 11
Rep., 63. Sedgwick thus expresses the same idea: "In this
country it has been said that laws are presumed to be passed
with deliberation, and with full knowledge of all existing
ones on the same subject; and it is therefore but reasonable
to conclude that the Legislature in passing a statute did not
intend to interfere with or abrogate any prior law relating
to the same matter, unless the repugnancy between the two
is irreconcilable, and hence a repeal by implication is not
favored; on the contrary, courts are bound to uphold the
prior law if the two acts may well subsist together." Sedg.
Stat. & Const. Law, 127. "It is a general rule that subse-
quent statutes, which add accumulated penalties and insti-
tute new methods of proceeding, do not repeal former penal-
ties and methods of proceeding ordained by preceding stat-

utes, without negative words.   Nor hath a latter act of parliament ever been construed to repeal a prior act unless there is a contrariety or repugnance in them, or at least some notice taken of the former act, so as to indicate an intention in the law-giver to repeal it.   Neither is a bare recital in a statute, without a clause of repeal, sufficient to repeal the positive provisions of a former statute.   The law does not favor a repeal by implication unless the repugnance be quite plain; and such repeal carrying with it a reflection on the wisdom of former parliaments, it has ever been confined to repealing as little as possible of the preceding statutes.   Although, then, two acts of parliament are seemingly repugnant, yet if there be not a clause of *non obstante* in the latter, they shall, if possible, have such construction that the latter may not be a repeal of the former by implication."   Potter's Dwarris on Statutes, 156, 157.   "Every effort must be made to make all the acts stand, and the later act will not operate as a repeal of the earlier one if by any reasonable construction they can be reconciled.   The repeal in any case will be measured by the extent of the conflict or the inconsistency between the acts, and if any part of the earlier act can stand as not superseded or affected by the later one, it will not be repealed."   26 Am. & Eng. Enc. (2 Ed.), 726, 727.   "Where a provision of law is thus modified or cut short, it is not in any proper sense repealed.   And we may lay down the doctrine broadly that no repeal takes place if the earlier provision can stand, to any extent consistently with the later.   Yet this proposition must not be misapplied. For if the later statute conflicts in any particular with the earlier, then the earlier is so far abrogated; though we do not say, speaking of the earlier as a whole, that it is repealed." Bishop Stat. Crimes (1873), sec. 165.

The quotations we have made from Lord Coke and the text writers are but forceful statements of the universal rule applicable to such cases.   We find, though, that these general

principles of statutory construction have been extended and applied to just such a case as we have presented in this record. This court, in *State v. Putney,* 61 N. C., 543, in passing upon a similar question, the punishment for the offense having been increased, said, by *Reade, J.:* "It is true that the defendant cannot be punished under a law which was not in existence at the time when the offense was committed, because that law would be *ex post facto,* unless where it lessens the punishment. It is equally true that, where a new law expressly or impliedly repeals the old law, there can be no conviction under the old law. But the Act of 1866-67 has no application to the case before us, because it does not repeal the old law, but is only prospective in its character and is to be read thus: If any person shall hereafter steal a mule, etc., he shall suffer death. All larcenies committed before that act are to be tried and punished without reference thereto." The motion in arrest of judgment was accordingly overruled. It has been suggested that this case conflicts with subsequent decisions of this court, and especially with the principle applied in *State v. Massey,* 103 N. C., 356. We are not aware of any case in this court where the rule, as laid down in *Putney's case,* has been differently stated; nor do we think any such case can be found. A careful search induces us to believe that in every case, where the question has been decided at all, the doctrine so tersely stated by *Judge Reade* in *Putney's case,* as applicable to the facts then before the court, has been approved. We are quite sure that the judge who decided *Massey's case* accepted it as the doctrine of this court and distinguished it from the rule that obtains when there has been an express and unqualified repeal, as was declared in *Massey's case* to be the effect of the statute then under consideration. No stronger proof of the full acceptance and approval of the rule can be furnished than by quoting from the opinion of the court in *Massey's case,* as delivered by *Avery, J.:* "There is a marked distinction between

the case at bar and *State v. Putney,* 61 N. C., 543, cited
by the Attorney-General. The defendant, Putney, was con-
victed at Fall Term,, 1867, of the Superior Court of Wake
County, under an indictment found in December, 1866, of
the larceny of a mule. On the 25th of February, 1867, the
General Assembly, after reciting that the crime of stealing
horses and mules hath of late, notwithstanding the punish-
ment provided by law, become much more common than for-
merly, enacted that every person who shall steal any horse,
mare, gelding or mule, and shall be thereof convicted, accord-
ing to due course of law, shall suffer death. Before that
time larceny was punishable by whipping or fine or imprison-
ment. The court held that the old and new law would be con-
strued so as to give effect to both by interpreting 'shall'
according to its natural import, as referring exclusively to
offenses thereafter committed and the preamble certainly in-
dicated that intent. No law or part of the law was expressly
or by necessary implication repealed; and the old and new
law were both left operative. Potter's Dwarris, 133." The
*Massey case* was decided upon the theory that the later
statute, by its very terms and as if in so many words, had
unqualifiedly and expressly repealed the earlier one. It did
not provide, as here, that the earlier act, where it conflicted
with the later one, should be repealed, but it actually repealed
so much of it, as affected the defendant's criminality and
conferred the power to punish him, by striking it from the
earlier statute. There could not be a stronger illustration
given of an express and direct repeal. It was the same as if
the act had provided that so much of the earlier statute as
made the defendant's act criminal and punishable, as therein
provided, was thereby repealed, and the court so regarded it.
Whether that was the true construction is not now the ques-
tion. We are merely attempting to explain the reason for
that decision without regard to its merits, in order to show
that the court recognized fully the authority of *Putney's case*

and held it was not inconsistent with the *Massey case.* The dissenting justices in the latter case rested their contention upon the construction of section 3761 of The Code, by which they said the amending act should be given prospective operation. *Massey's case,* therefore, instead of rejecting the doctrine of *Pulney's case* or in the least impairing its force, must be taken to have affirmed it in the most positive language.

The question presented has been considered in the courts of some of the other States, and their decisions sustain the conclusion we have here reached. In *Pittman v. Commonwealth,* 2 Rob. (Va.), 804, the court said: "It is agreed, however, that though there is no express repeal of the previous laws, there is an implied one; that the act prescribes a new punishment for past offenses—an aggravated punishment— by increasing the fine from $20 to $30; that it is inconsistent with the former laws, and, being the last expression of the legislative will, must abrogate them upon the principle, *leges posteriores priores contrarias abrogant.* The authorities cited at the bar show that implied repeals are not favored; that two affirmative statutes shall co-exist if they can, and this notwithstanding the use of general words, whose grammatical construction might imply the contrary. 6 Bac. Abr., 439. Let us then inquire why we are obliged to imply a repeal of the previous laws and discharge the previous offenses? Did the Legislature intend such repeal and discharge? For we admit that in this act, as in all others, we must inquire into the legislative intent and give effect to it if we can. Admitting then that the act varied and increased the punishment prescribed by former laws, the question occurs, to what offenses does it apply? Does it apply to violations committed before its passage or to those committed afterwards? If it applies only to offenses committed after its passage, it does not conflict with the former law and consequently both will stand. If it applies

or can be legally applied to previous offenses, then the conflict will arise and the last law only will have effect." And *Field, J.,* in the same case, said: "This law, therefore, so far as it was intended to apply to offenses which had been committed before its passage, was void and, being void, it cannot have the effect of repealing by implication any previously existing law, with which it would have been in conflict if it had been a valid law. It is not in conflict with any law against unlawful gaming, as to offenses theretofore committed, because it is void, and as a piece of blank paper. But as to offenses committed after the passage of the act, it is in conflict with the old law, because it increases the penalty from $20 to $30. From this view of the case it follows that as to offenses of which the defendant has been convicted (both of which were committed before the first of March, 1842), the old law was in force and is yet in force, and judgments shall be rendered against them for the fine of $20 only and costs." In *Pegram's case,* 1 Leigh, (Va.) 569, it was said by the court: "Although the principle is correct that *leges posteriores priores contrarias abrogant,* yet they only abrogate them from the time that the latter law is passed or goes into effect. The principle on which this rule prevails is that the latter statute being incompatible with the former, they cannot exist together, and the latest expression of the will of the Legislature is the law. But there is no incompatibility in the statutes now under consideration. A punishment affixed to an offense prior to the first of May, 1828, is not incompatible with a different punishment, either lighter or more severe, affixed to the same offense subsequent to that date. They may well stand together. The punishment prescribed by the Acts of 1827-28 being different from that prescribed by the Act of 1822-23 is certainly an implied repeal of it, as to new offenses, from the time it goes into effect, but, by the very terms of the law, the new punishment is only applied to the offenses happening

STATE *v.* PERKINS.

*after* the first of May, 1828, leaving the old punishment to be applied to the offenses happening before that day." There are decisions in Alabama to the same effect. "No court," it is said in *Miles v. State,* 40 Ala., 42, "will, if it can be consistently avoided, determine that a statute is repealed by implication. *Ludlow's Heirs v. Johnston,* 3 Ohio, 553. When two affirmative statutes exist, one is not to be construed to repeal the other by implication, unless they can be reconciled by no mode of interpretation. *Dodge v. Gridley,* 10 Ohio, 178. Section 3184 of The Code and the act of December, 1865, being both affirmative statutes, when does the contrariety or repugnance in them effect a repeal of the former by the latter? The latter statute has operative effect only as to the offenses named therein, when committed subsequent to its passage. It cannot have retrospective operation as its language and the Constitution both alike forbid it. There is no conflict in the two statutes, then, as the offenses named, when committed *prior* to the enactment of the latter statute; and consequently as to the offenses thus committed, there is no repeal by the latter of the prior law. To this extent, the two may well stand together; but when the field of operation becomes entirely covered by the latter statute, the former is repealed by the repugnance of the two, by analogy to a principle in nature that no two things can occupy precisely the same space at the same period of time." And in *Moore v. State,* 40 Ala., 53, it is said: "The punishment, as to a certain class of persons, who after its passage 'shall be guilty,' is prescribed, and it is greater than the punishment prescribed by the prior law for the same offenses, and this upon principles of the common law, neither expressly nor by implication, repealed the former statute. Repeals by implication are not favored, and for such a repeal to take effect, the repugnancy must be clear. A statute is never repealed by the repugnancy of matter in a subsequent one, except to the extent of such repugnancy. If such repug-

nancy between two statutes effects a repeal of the former to
the extent of the opposition, and leaves a field still for the in-
dependent operations of both, the latter does not repeal the
former as to such matter not affected by the latter statute."
See also *David v. State,* 40 Ala., 67; *Wade v. State, ibid.,*
74; *Com. v. Wyatt,* 6 Randolph, 694, and especially the case
of *Shepherd v. People,* 25 N. Y., 412. A like construction
was given to the statute of frauds (29 Car., II Ch. 5,) in
*Gilmore v. Shuter,* 2 Lev., 227. It is true that was a case
of a promise in consideration of marriage, but the underly-
ing principle of the decision, that the new act operates pro-
spectively and does not conflict with the old, bears directly
upon our case, though the two cases are not of the same kind.
This court, in *Winslow v. Morton,* 118 N. C., 491, approved
the following rule in the construction of statutes with refer-
ence to implied repeals, namely, that the law does not favor
implied repeals and the implication, in order to be opera-
tive, must be necessary, and if it arises out of repugnancy
between the two acts, the later abrogates the earlier only to
the extent that it is plainly inconsistent and irreconcilable
with it, citing *Simonton v. Lanier,* 71 N. C., 498, in which
*Judge Bynum* for the court said, that it is true every affirma-
tive statute is a repeal of a prior affirmative statute, so far
as it is contrary to it, under the maxim, *leges posteriores
priores contrarias abrogant,* but the law does not favor an
implied revocation, nor is it to be allowed unless the repug-
nancy be plain; and where, in the latter act, there is no
clause of *non obstante,* it shall, if possible, have such con-
struction that it will not operate as a repeal, citing *State v.
Woodside,* 31 N. C., 498, where the same rule is clearly stated
by *Judge Nash.* Applying this rule to the construction of
the Act of 1893, creating degrees of homicide, this court
said, in *State v. Coley,* 114 N. C., 883: "The controversies
that have heretofore provoked discussion have arisen upon
the question whether particular language could be construed

as implying a legislative intent to limit the operation of an act to offenses committed after its passage and leave the pre-existing law in force as to those previously committed. (*State v. Putney,* 61 N. C., 543; *State v. Long,* 78 N. C., 571; *State v. Williams,* 97 N. C., 455; *State v. Massey,* 103 N. C., 356). As the purpose that the Act of 1893 should operate prospectively, and that the common law should remain in force as to homicides committed prior to its passage, is expressed in unequivocal terms in the proviso to the act, we think that the question whether the offense, with which the prisoners are charged, should be classified as murder in the second degree did not arise." It can make no difference how the intention of the Legislature, that an act should have prospective operation, is expressed; whether it is done by unequivocal terms in the act or by a proviso or is to be gathered from its general scope and tenor, so that it appears with sufficient clearness that such is the intention. This is too plain for argument, for at last it is the intention that we seek to find in the act and when found we enforce it. The principle of the decision in *Coley's case,* therefore, applies to the case at bar, as the two cases, with this understanding of the law, become parallel, and the repealing act in each must have the same construction and be in like manner restricted in its effect, as it is perfectly apparent that the Legislature intended the Act of 1905 to operate prospectively. The use of the words "it shall be unlawful" in the first section clearly evince such a purpose, not only by their grammatical construction, but by the meaning assigned to them in the decisions of the courts. *Putney's case, supra; Moore v. State, supra.* The spirit and purpose of the two acts and the object with which they were passed forbid the conclusion that the Legislature intended a repeal of the prior act. The Legislature, when it passed the second act, was apparently not in a forgiving mood. The evils of intemperance no doubt had increased and called for more stringent provisions.

for the future, but not for the exercise of mercy in dealing with past offenses.

It follows that the defendant can derive no aid from the last enactment in making good his contention that the Act of 1903 has been repealed and, therefore, that there is no law now under which he can be punished for his unlawful act, committed in 1904. There was ample authority for the sentence imposed.

No Error.