STATE SANATORIUM v. B. R. LACY, STATE TREASURER.

(Filed 30 May, 1917.)

**1. Statutes—Repeal—Implication.**

The repealing of a statute by a subsequent one by implication is not favored by interpretation, and where two laws on the same subject are both affirmative in terms, the latter will not be held to repeal the former unless and to the extent that the two are clearly repugnant, or unless the latter, covering the entire subject, gives clear indication that it was intended as a substitute for the former.

**2. Same—State Sanatorium—Appropriations.**

A statute was enacted incorporating a department of the State Government for treatment of "persons afflicted with tuberculosis," appointing directors and making appropriation and apportioning the same for establishment and maintenance, and later, at a different session, a statute was enacted making appropriation for these stated purposes. At a still later session a statute was enacted abolishing or removing the old directorate, substituting the State Board of Health as such. *ex officio,* continued the corporation and created and made annual appropriations for a new feature for "extension work," distinct and separate from those theretofore existing. At a still later session a statute was enacted for a bond issue to provide for permanent improvements on the principal State institutions, apportioning a certain amount to the one in question, without repealing clause. *Held,* the appropriation for the "extension work" being distinct,

and so recognized by the statute, was not repealed by implication by the last enactment, it being with reference only to the maintenance of the institution.

### 3. Same—Annual Appropriations—"Extension Work."

Where in a general act appropriating money to State institutions there appears in the same section three distinct appropriations, separately stated, to the State Sanatorium, two of which were embraced in former statutes, but adding a third for the dissemination of knowledge concerning tuberculosis, with specific annual appropriation, the placing of the appropriations in such act, ordinarily effective for the two intervening years from the date of the legislation, does not control the interpretation that the repeal of statutes by implication is not favored; and a later statute making appropriations for the first two items, and leaving out the third, will not be held to repeal the third, in the absence of a repealing clause, and especially when it appears that such would leave the institution without means to carry on this important work.

### 4. Same—Laboratory of Hygiene—State Board of Health.

The principle upon which it is held in this case that appropriation of 1915 for "extension work" or disseminating knowledge throughout the State as to tuberculosis was not repealed by the laws of 1917 is not affected by the provisions of Revisal, sec. 3057, directing the examination for suspected sputum by the State Laboratory of Hygiene, or by the Laws of 1909, providing an assistant, such being an aid to the main purpose of the statute of 1915, and not coming within the appropriations to the State Board of Health, as a part of that department.

BROWN, J., dissenting.

CONTROVERSY submitted on case agreed and heard before *Devin, J.,* at April Term, 1917, of WAKE.

The question at issue was whether the sum of $10,000, "annually," appropriated by the General Assembly of 1915 (chapter 98) for "extension work" by the "Bureau of Tuberculosis," a special bureau of plaintiff corporation created by chapter 40, Extra Session 1913, should be set apart and made available by defendant for the purpose indicated.

There was judgment for plaintiff, and defendant excepted and appealed.

*Winston & Biggs; Oates & Herring for plaintiffs.*
*James S. Manning and R. H. Sykes for defendant.*

HOKE, J. By Chapter 964, Laws 1907, the General Assembly incorporated plaintiff corporation for treatment of "persons afflicted with tuberculosis," appointed a directorate and made appropriation of $15,000 for establishment, and $5,000 for maintenance, and thereafter, at its biennial sessions, made appropriations for this institution for the two designated purposes of improvement and repairs and current main-

tenance, till the special session of 1913. At that session, by chapter 42, the Legislature abolished or removed the old directorate and substituted therefor the members of the State Board of Health as directors *ex officio* of the institution, continuing the corporation, and created in the same statutes, as a feature of its corporate activities, the Bureau of Tuberculosis, charged with the duty of "extension work," the nature of this work and the relevant facts attendant on its execution being set forth in the case agreed as follows: "That the State appropriation for said extension work is kept and expended separately and is supplemented with an amount approximately the same by the Metropolitan Life Insurance Company of New York, which supplemental amount is likewise used and expended from the sanatorium along with the said extension fund and for the same purpose. The said "extension work fund" is used to furnish the "tuberculin test" treatment free to physicians throughout the State; to distribute at prime cost "sputum cups" without distribution expense added; to assist in community nursing work; to distribute literature upon the subject of tuberculosis; to furnish appropriate articles to the press of the State of North Carolina upon tuberculosis; to give stereopticon and moving picture exhibitions on the prevention and treatment of tuberculosis; to maintain a correspondence department with the physicians of North Carolina in regard to the diagnosis and treatment of tuberculosis, and for other means for the education of the people concerning the disease." That in the general act of 1915, ch. 98, sec. 7, the Legislature appropriated $25,000 annually for support and maintenance, $60,000 for permanent improvements, one-half each year, this amount being charged with certain outstanding debts of the institution, and $10,000 annually for extension work.

In 1917 the Legislature, at its regular session, chapter 193, section 8, this being the general act on the subject, appropriated to this institution, for support and maintenance, $30,000 for 1917 and $40,000 for 1918, and, in chapter 154, directed a bond issue of $3,000,000 to provide for permanent improvements on the principal State institutions, $150,-000 being set apart for such purpose for plaintiff and to be available one-sixth annually. In neither of these two statutes, nor in any other legislation on the subject, is there any appropriation made for this extension work nor any reference thereto, nor do the statutes contain any repealing clause, general or special.

Upon these, the facts chiefly relevant, it is insisted for defendant that the appropriation of $10,000 annually for extension work made by the law of 1915 was repealed by the legislation on the subject in 1917, and that said amount is no longer available to plaintiff; but we are of opinion that the position cannot be maintained. It is a well recognized principle of statutory construction, here and elsewhere, that implied

repeals are not favored, and where two laws on the same subject are both affirmative in terms, the latter will not be held to repeal the former unless and to the extent that the two are clearly repugnant or unless the later, covering the entire subject, gives clear indication that it was intended as a substitute for the former. The accepted position is very well stated by *Associate Justice Avery* in *Winslow v. Morton,* 118 N. C., 486, as follows: "These rules of law for the construction of statutes are well established: (1) The law does not favor the repeal of an older statute by a later one by mere implication. (2) The implication which will work the repeal of a statute must be necessary, and if it arises out of repugnancy between the two acts the later act abrogates the older only to the extent that it is inconsistent and irreconcilable with it. A law will not be deemed repealed because some of its provisions are repealed in a subsequent statute. (3) Where a later or revising statute clearly covers the whole subject-matter of antecedent acts, and it plainly appears to have been the purpose of the Legislature to merge into it the whole law on the subject, a repeal by necessary implication is effected." And there are many decisions of our Court in approval of the principle. *S. v. Johnson,* 171 N. C., 799; *S. v. Perkins,* 141 N. C., 797; *S. v. R. R.,* 141 N. C., pp. 846-853; *College v. Lacy,* 130 N. C., 364; *S. v. Davis,* 129 N. C., 570; 36 Cyc., p. 1077. In *Johnson's case* it was held: "That a later statute will not be construed to repeal a former one by implication if by any reasonable interpretation the two acts can be reconciled and construed together." In *S. v. Perkins, supra,* a similar ruling was upheld and *Associate Justice Walker,* delivering the opinion, quotes from Sedgwick on Statutory Construction, p. 127, as follows: "In this country it has been said that laws are presumed to be passed with deliberation and with full knowledge of all existing ones on the same subject, and it is therefore reasonable to conclude that the Legislature, in passing a statute, did not intend to abrogate or interfere with any prior law relating to the same matter unless the repugnancy between the two is irreconcilable, and hence a repeal by implication is not favored; on the contrary, courts are bound to uphold the prior law if the two acts may well subsist together." In 36 Cyc., *supra,* it is said further: "When two statutes cover, in whole or in part, the same subject-matter, and are not absolutely irreconcible, the court will, if posssible, give effect to both."

Considering the record in the light of these principles, it appears that this extension work, provided for by the act of 1913 and to be managed by a separate bureau specially created for the purpose, has no natural or necessary connection with the current maintenance of the sanatorium or the construction and repair of its buildings, but is a separate and distinct work, designed and intended to help the State and its people gen-

erally to a better knowledge of the nature of this dread disease and how best to treat it and prevent its spread. When a statute, therefore, recognizing that they are distinct, provides for the two purposes of maintenance and improvement separately and adds a third appropriation of "$10,000 annually for extension work," a third purpose, this we think should not be repealed by subsequent statutes containing no repealing clause which make adequate provision for maintenance and improvement and no reference of any kind to extension work. From the nature and importance of this work it would not be readily inferred that it was to be abandoned, and the legislation should be so construed as to give the terms "$10,000 annually" the meaning that such words naturally import, and continue its payment unless and until it is clearly withdrawn.

The case of *College v. Lacy,* 130 N. C., 364, is very similar to the one before us, so much so that it may be regarded as decisive of the question presented. In that case the General Assembly of the State, at its session 1901, established an agricultural and mechanical college for the colored race "and appropriated $2,500 annually" for the purpose of carrying out the provisions of the act. In 1895, chapter 146 appropriated "$5,000 annually for the support, maintenance, equipment, and enlargement and extension of the college," etc. For some years after the enactment of the second statute the Treasury Department, interpreting the statutes as cumulative or additional, the one to the other, paid the college authorities the sum of $7,500 for the purposes specified in the law. In 1901, however, the department took the position that the act of 1895 was in substitution for that of 1891, and that only $5,000 annually was available. On action brought, the claim of the State Treasurer was disapproved, and *Cook, J.,* delivering the opinion, stated the correct principle as follows: "Was section 10 of chapter 549, Acts of 1891, repealed by chapter 146, Acts of 1895? This is the issue raised by the facts agreed and presented for our decision by the case on appeal. Defendant contends that while the repeal is not in express terms, yet it is by necessary implication. This contention is handicapped in the outset with the presumption against it. A statute will not be construed as repealing a prior one on the same subject (in the absence of express words to that effect) unless there is an irreconcilable repugnancy between them, or unless the new law is evidently intended to supersede the prior one upon the subject and to comprise in itself the sole and complete system of legislation on the subject. Black on Interpretation of Laws, p. 112; Endlich on Interpretation of Statutes, sec. 210; Sutherland on Statutory Construction, sec. 138. The two acts now being construed being affirmative, and the subject being such that both may stand together, they both should have concurrent efficacy (1 Blk., 90), unless they be repugnant

or inconsistent, or it should appear that the Legislature intended to cover the whole subject embraced in both and to prescribe the only rule in respect of that subject in the latter act. *S. v. Davis,* 129 N. C., 570."

We are not inadvertent to the argument for defendant that this appropriation for extension work appeared in the general appropriation act of 1915, designed to provide support for the principal institutions of the State for two years of the legislative life; that the term "annually" in the statute is in the main used whenever the appropriation is the same for each of the two years; that it should not, therefore, be allowed its ordinary significance because its placing and a perusal of the entire statute show that the appropriation, with the others, was to terminate at the end of the two years. The position is not without force, but, in our opinion, it may not be allowed to prevail in view of the settled principles of law governing the question of implied repeals and the considerations to which we have adverted requiring these applications to the principal case.

As heretofore stated, there being no repealing clause in the legislation of 1917, general or special, and the two principal purposes of support and maintenance having been fully and adequately provided for by these later statutes, it is clear that the General Assembly intended the subsequent provision for those two purposes to be in substitution for the former; but, having made no provision whatever for extension work nor any reference to it, the appropriation must continue until it is recalled. It cannot well be that this omission was an inadvertance on the part of the Legislature of 1917 and its committee on appropriations. The appropriation to plaintiff, in the act of 1915, of $25,000 for maintenance, $60,000 (one-half) each year, for improvements and $10,000 annually for this extension, were in the same section, No. 7, and when the appropriations committee of 1917, known to be alert, diligent, and capable, made specific and definite change as to the two purposes of maintenance and improvement and left the appropriation of $10,000 annually entirely unchanged, and inserted no repealing clause whatever, it is the fair deduction that they supposed their act would be interpreted according to the prevailing rules of statutory construction in case of implied repeals, and the appropriation for extension work would continue, as stated, till it was otherwise provided. Nor can we approve the further suggestion, that this extension work has been in fact made a department of the State Board of Health and should be supported from the liberal appropriation to that department. It is true that in Revisal, sec. 3057, direction is given that examinations for suspected sputum, in case of tuberculosis, shall be made in the State Laboratory of Hygiene. It is true, also, that in chapter 793, Laws 1909, it is provided that the State

Board of Health may, in its discretion, elect a special assistant to the State Health Officer in certain matters appertaining to tuberculosis work; but these special provisions were clearly designed and intended as an aid to the main purpose, and can, by no rule of interpretation, be held to repeal a statute explicit in terms and plain of meaning which created this bureau as a department of the State Sanatorium, gives full and specific enumeration of its duties, and there has nowhere been any legislation which does or purports to change or abolish it. We are confirmed in the view we take of the question by the consideration stated on the argument and unchalleneged, so far as we heard, that unless plaintiff's position is maintained this important work, designed and well calculated to be of the greatest value to the State at large, would necessarily be discontinued for entire lack of funds, and by the further fact that if this appropriation of $10,000 is withdrawn from plaintiff, it will, in the face of larger burdens and very extended scope of activity and usefulness, suffer a positive reduction in the amount allowed it of $5,000 annually, and this from a Legislature which has shown throughout a disposition to deal most liberally with the deserving public institutions of the State, including the plaintiff.

There is no error, and the judgment for plaintiff will be

Affirmed.

BROWN, J., dissenting: I think it is manifest from reading the act of 1915 making the appropriation of $10,000 that it was the purpose of the General Assembly that the act should be operative like all other appropriations for State institutions, for two years only. This is evidenced by the fact that appropriations are made for the State Hospital for the colored race at Goldsboro for the year 1915 and the year 1916, and for the support and maintenance of the State Hospital at Morganton, for the support of the North Carolina School for the Deaf at Morganton, for the support of the State Laboratory of Hygiene at Raleigh; and it is clear by using the word "annually" in those sections in which it appears that the General Assembly meant only for each of two years—that is, for the years 1915 and 1916, the term of the General Assembly. It has been the unvarying rule of the General Assembly of North Carolina at each regular session to pass a general appropriation bill covering the two years until its next session.

The appropriation for tubreculosis extension work from its very character ought not to be taken out of the general rule that limits such appropriations to the two years intervening between the sessions of the General Assembly. The need for such appropriation and the amount

required must of necessity vary, and it is proper that each recurring Legislature should pass on the amount required to continue such work and also whether it shall be continued at all or not.

The appropriation act for State institutions enacted by the Legislature of 1917 indicates by its title that it was an act to make provision for the Tuberculosis Sanatorium and its work as well as all other State institutions. The fact that the previous appropriation of $10,000 for tuberculosis extension work was not embraced in the act is conclusive evidence, to my mind, that the General Assembly did not intend to continue it. The lawmakers may have concluded that results did not justify it.