## STATE v. JOSEPH CALCUTT.

(Filed 21 May, 1941.)

**1. Gaming § 2b—**

Licenses for slot machines issued by the Department of Revenue relate only to such machines as are lawful, and therefore when a defendant pleads guilty to an indictment charging ownership, sale, lease, transportation, operation, and possession of slot machines which are prohibited by law, the fact that he has obtained licenses for lawful machines is immaterial.

**2. Same—**

The law forbids the ownership, sale, demise, or transportation of certain slot machines, and permits the possession, use and operation of others, under license.

**3. Same—**

Ch. 138, Public Laws of 1923, proscribing the operation and possession of slot machines of the type therein defined, is not repealed by ch. 196, Public Laws of 1937, proscribing ownership, sale, lease and transportation of such slot machines, since the two statutes are not repugnant, but are complementary.

**4. Statutes § 10—**

The repeal of statutes by implication is not favored, and a later statute will not repeal a former, dealing with the same subject matter, if the two

18—219

statutes can be reconciled and both declared to be operative without repugnance.

**5. Indictment § 8: Gaming § 3—**

The indictment charged defendant in one count with ownership, sale, lease and transportation of certain slot machines and devices prohibited by law, ch. 196, Public Laws of 1937, and charged defendant in the second count with the operation and possession of certain illegal slot machines, ch. 138, Public Laws of 1923. *Held:* The different counts in the bill may stand as separate and distinct offenses, and separate judgments may be entered thereon, and defendant's contention of duplicity is untenable.

**6. Criminal Law §§ 63, 72—Suspension of execution of judgment must not be so conditioned as to interfere with right of appeal.**

Upon defendant's plea of guilty, judgment was entered on one of the counts that defendant be confined to the county jail for a term of two years to be assigned to work on the public roads, with further provision that execution of the judgment should be suspended and the defendant placed on probation upon certain specified conditions, among which were that he pay a fine in a stipulated amount and the cost of the action at the trial term, and that he perform certain other acts within 30 days from the date of judgment. *Held:* While a perfected appeal stays execution during the pendency of the appeal, C. S., 4654, and in case of affirmance, until the clerk of the Superior Court receives certificate of the opinion of the Supreme Court, C. S., 4656, an appeal does not affect the terms of suspension or conditions of probation, unless the judgment so provides, and therefore, since defendant could not meet the conditions upon which execution of the judgment was suspended if he exercised his right to appeal, C. S., 4650, the judgment on this count is erroneous, and the cause is remanded for proper judgment thereon.

CLARKSON, J., concurring in part and dissenting in part.
DEVIN, J., concurring in part and dissenting in part.
SEAWELL, J., joins in the opinion of DEVIN, J.

APPEAL by defendant from *Parker, J.,* at December Term, 1940, of WAKE.

Criminal prosecution heard upon indictment charging the defendant, in two counts, (1) with the ownership, sale, lease and transportation of certain slot machines and devices prohibited by law, and (2) with the operation and possession of certain slot machines (described as gambling devices) against the form of the statute in such cases made and provided and against the peace and dignity of the State.

To this bill of indictment the defendant entered a plea of guilty.

Judgment on the first count: Twelve months in the Wake County jail to be assigned to work on the public roads.

Judgment on the second count: Two years in the Wake County jail to be assigned to work on the public roads; execution to begin at the expiration of sentence on the first count. (The sentence on the second count was first fixed at eighteen months and later during the term changed to two years.)

It is further provided that the road sentence imposed on the second count, which is to begin at the expiration of the road sentence on the first count, shall be suspended and the defendant thereafter placed on probation for a period of three years; *Provided:* (1) That he pay a fine of $10,000 and the costs of the action in cash at this term; (2) that he dispose of all unlawful slot machines in his possession within thirty days from this order and report same to the presiding judge at the next criminal term of this court (none to be sold, disposed of or placed in North Carolina); (3) that he observe the slot machine laws of the State for said three-year period; (4) that he refrain from any political activity in North Carolina during said three years; (5) that he remain under the supervision of the probation officer assigned to Wake County and make no request that the case be assigned to Cumberland County; (6) that he be law-abiding during said probation period; (7) that he not change his address or leave the county or State without first securing the permission of the probation officer; (8) that he report to the probation officer as directed and permit the probation officer to visit his home or elsewhere; (9) that he appear with the probation officer during said three years of probation in open court at the May and November Terms, Wake Superior Court, to show his good behavior and that he has complied with all and singular the terms of suspension of the road sentence—failing in which he is to serve said two-years road sentence in full.

From the foregoing judgment, the defendant in open court gave notice of appeal to the Supreme Court and was allowed fifteen days to serve his case on appeal. Appearance and appeal bonds fixed at $25,000 and $100.00 respectively. Numerous errors are assigned by the appellant.

*Attorney-General McMullan and Assistant Attorneys-General Bruton and Patton for the State.*

*Bunn & Arendell, Douglass & Douglass, and Malcolm McQueen for defendant.*

STACY, C. J. The burden of the defendant's first complaint is, that having paid the State of North Carolina $105,555.00 in license taxes for the privilege of operating 5,258 slot machines within the State, he ought not now to be prosecuted for exercising these licenses. The soundness of the defendant's position in this respect is not questioned by the State. Indeed, it would perhaps be conceded. But this is not the case *sub judice.* The defendant has pleaded guilty to violations of the criminal law, and the licenses issued by the Revenue Department do not purport to authorize any such conduct. Nor did the defendant think so when he entered his plea. The licenses issued by the Revenue Department, therefore, may be put aside as having no bearing, legal or otherwise, upon the prosecution.

It is well understood that the law forbids the ownership, sale, demise or transportation of certain slot machines, *Calcutt v. McGeachy,* 213 N. C., 1, 195 S. E., 49, and permits the possession, use and operation of others, under license. *McCormick v. Proctor,* 217 N. C., 23, 6 S. E. (2d), 870. The defendant pleaded guilty to such ownership, sale, lease, transportation, operation and possession of slot machines as is prohibited by law. This disposes of his suggestion of duplicity. *S. v. Christmas,* 101 N. C., 749, 8 S. E., 361.

The first count in the bill is couched in the language of ch. 196, Public Laws 1937. The second count follows the language of ch. 138, Public Laws of 1923. It is the position of the defendant that the earlier statute was repealed by the later act, and that, in reality, only one offense is charged in the bill of indictment. The position is not supported by the authorities. *S. v. Humphries,* 210 N. C., 406, 186 S. E., 473; *S. v. Johnson,* 171 N. C., 799, 88 S. E., 437; *S. v. Perkins,* 141 N. C., 797, 53 S. E., 735; *S. v. Biggers,* 108 N. C., 760, 12 S. E., 1024.

The applicable principle is clearly and succinctly stated by *Adams, J.,* in *Story v. Comrs.,* 184 N. C., 336, 114 S. E., 493, as follows: "The repeal of statutes by implication is not favored. The presumption is against the intention to repeal where express terms are not used, and it will not be indulged if by any reasonable construction the statutes may be reconciled and declared to be operative without repugnance."

The latter act is not so repugnant to the former as to work a repeal, either intentionally or otherwise. *Lumber Co. v. Welch,* 197 N. C., 249, 148 S. E., 250; *Waters v. Comrs.,* 186 N. C., 719, 120 S. E., 450. Indeed, the two enactments are more nearly complementary than inconsistent. Hence, the different counts in the bill may stand as separate and distinct offenses, and separate judgments may be entered thereon. *S. v. Moschoures,* 214 N. C., 321, 199 S. E., 92; *S. v. Malpass,* 189 N. C., 349, 127 S. E., 248; *S. v. Jarrett,* 189 N. C., 516, 127 S. E., 590.

No sufficient reason has been made to appear why the judgment on the first count should not be upheld. It is well within the terms of the statute. *S. v. Farrington,* 141 N. C., 844, 53 S. E., 954.

The judgment entered on the second count, however, presents a matter of different substance.

It seems to have been overlooked on all hands that the privilege of probation, which the court clearly intended to offer the defendant pursuant to ch. 132, Public Laws 1937, is so conditioned as to be inconsistent with his right of appeal. To exercise the one he must forego the other. The first requirement could only be met at the December Term, 1940; and the second condition was to be performed within thirty days thereafter, otherwise under paragraph 9 of the suspension, the two-year road sentence was to become absolute. In other words, by appealing the defend-

ant has lost his opportunity to accept the terms of the suspended sentence. This, we apprehend, was an inadvertence and unintentional. It was perhaps occasioned by the fact that at the time the sentence was imposed no appeal was contemplated, and when an appeal was later noted, the conflict was not observed. However this may be, the defendant was so circumstanced, by the conditions imposed, that he could not elect to comply with the terms of suspension without rendering his appeal nugatory or certainly premature, and by appealing without such election, he necessarily forfeited the privilege of probation. We are well assured that it was not the purpose of the trial court to force him into this dilemma. His appeal was allowed, and it is not to be supposed that any penalty was attached thereto or imposed as a result thereof. C. S., 4650.

The perfecting of an appeal in a criminal case as required by law, either by giving bond or *in forma pauperis,* stays execution therein during the pendency of the appeal, C. S., 4654, and, in case of affirmance, until the clerk of the Superior Court receives certificate of the opinion of the Supreme Court, C. S., 4656 (otherwise in capital felonies, C. S., 4663), but this would not affect the terms of suspension, or conditions of probation, unless so provided. No provision is made for extending the terms of suspension where timely performance is made the essence of such terms. Here, the time limits annexed to the first two conditions are unbending and they conflict with the defendant's right of appeal.

A judgment rendered under a misapprehension of its effect, which inadvertently denies a substantial right, will be vacated on appeal. *S. v. Fuller,* 114 N. C., 886, 19 S. E., 797; *McGill v. Lumberton,* 215 N. C., 752, 3 S. E. (2d), 324, and cases there cited.

It is not worth while to discuss the terms of the suspension, as they are no longer available to the defendant and a different judgment may hereafter be rendered. The principle involved is more important than the disposition of a single case.

The judgment on the second count will be vacated and the cause remanded for further consideration of this count.

On the first count: Judgment affirmed.

On the second count: Error and remanded.

CLARKSON, J., concurring in part and dissenting in part: I concur on the *first count* and dissent on the *second count.*

The defendant was indicted under the following bill of indictment:

"No. 3236—State v. Joseph Calcutt, trading as Vending Machine Company. Illegal Possession Slot Machines, which said Bill of Indictment is in words and figures as follows, to-wit:

"State of North Carolina—Superior Court. Wake County—November Term, A. D., 1940.

"The Jurors for the State, upon their oath present, That Joseph Calcutt, Individually, and Joseph Calcutt, trading as Vending Machine Company of Fayetteville, N. C., late of the County of Wake, on the 9th day of May, in the year of our Lord, one thousand nine hundred and forty, with force and arms, at and in the County aforesaid, did unlawfully and willfully own, store, keep, possess, sell, rent, lease, let on share, transport and offer to sell, rent, lease and let on share for the purpose of operation in the said County of Wake certain slot machines and devices prohibited by law, to-wit: certain machines, apparatus and devices that were adapted or might be readily converted into ones that were adapted for use in such way that as a result of the insertion of a piece of money or coin or other object such machines or devices were caused to operate or might be operated in such manner that the user might receive or become entitled to receive certain pieces of money, credit, allowance or thing of value, or a check, slug, token or memorandum which might be exchanged for money, credit, allowance, or some thing of value or which might be given in trade or the user of such machines, apparatus or devices might secure additional chances or rights to use such machines, apparatus or devices or in the playing of which the operator or user had a chance to make varying scores or tallies upon the outcome of which wagers might be made.

"And the Jurors for the State upon their oath do further present, That Joseph Calcutt, individually, and Joseph Calcutt, trading as Vending Machine Company of Fayetteville, N. C., late of the County of Wake, on the 9th day of May, in the year of our Lord, one thousand nine hundred and forty, with force and arms at and in the County aforesaid, did unlawfully and wilfully operate, keep in their possession or in the possession of another for the purpose of being operated, certain slot machines that did not produce for or give to the person who placed a coin or money or the representative of either therein the same return in market value each and every time such machine was operated by placing money or coin or the representative of either therein, against the form of the Statute in such case made and provided and against the peace and dignity of the State.    W. Y. Bickett, Solicitor."

The judgment on the bill of indictment was as follows:

"The defendant, Joseph Calcutt, trading as the Vending Machine Company heretofore at this term of Court, entered a plea of guilty to the Bill of Indictment in this case, which Bill of Indictment has two counts, and it further appearing to the Court that the defendant admitted in open Court that he was the sole owner of the Vending Machine Company of Fayetteville, which is his trade name, and that he has been in the slot machine business for years and has paid fines in some 20 to 21 cases, and it further appearing to the Court from his income tax returns

that his business during 1937, 1938 and 1939 has grossed in excess of four and one-half million dollars, and that during said time he has paid $73,000 for legal expense, and it further appearing to the Court that while he was being tried yesterday one-armed bandits, *i.e.,* slot machines that paid off in money, belonging to him, were being operated in Fayetteville, North Carolina.

"The Judgment of the Court in the first count in the Bill of Indictment is that the defendant, Joseph Calcutt, be confined in the common jail of Wake County for a term of twelve months to be assigned to work the public roads under the direction of the State Highway & Public Works Commission.

"As to the second count in the Bill of Indictment the Judgment of the Court is that the defendant, Joseph Calcutt, be confined in the common jail of Wake County for a term of two years to be assigned to work the public roads under the direction of the State Highway and Public Works Commission. Execution of the road sentence in the second count to begin at the expiration of the road sentence in the first count.

"It is Further Ordered and Decreed that the road sentence in the second count in this case which is to begin at the expiration of the twelve months road sentence in the first count which the defendant, Joseph Calcutt, is to serve be, and the same is hereby suspended, and the defendant is hereby placed on probation for a period of three years after his twelve months road sentence imposed in the first count in the Bill in this case has been served, under the supervision of the North Carolina Probation Commission and its officers subject to the provisions of the laws of this State and the rules and orders of said Commission and its officers with leave that execution may be prayed at any time during the period of probation; that as a condition of probation the said defendant, Joseph Calcutt, shall:

"1. Pay a fine of $10,000 and the costs of this action in cash at this term.

"2. That he shall within thirty days from this order dispose of every machine of any kind which he owns, possesses or has any interest in, direct or indirect, that violates the North Carolina Slot Machine Law, and that he shall show that to the presiding Judge of this Court on the first day of the next Criminal Term of this Court, and that he shall not sell nor dispose of nor place any of these machines in North Carolina.

"3. That he shall not during said three years either directly or indirectly or in any way, form, shape, or manner, violate the Slot Machine Laws of this State.

"4. That he shall not, during said three years, either directly or indirectly in any way, form, shape, or manner, have anything to do with any politics in the State of North Carolina, either himself or through anyone else.

"5. That he shall at all times remain under the supervision of the Probation Officer assigned to Wake County, and shall not request that this case be assigned to Cumberland County.

"6. That he shall not violate, during said three years, any State law.

"7. That he shall not change his address or leave the County or State without first securing the permission of his Probation Officer.

"8. That he shall report to the Probation Officer as directed and permit the Probation Officer to visit his home or elsewhere.

"9. That he shall appear with the Probation Officer of this County during said three years of probation in open Court at the May and the November Term of this Court, and if he cannot satisfy the presiding Judge of those terms that he has not violated the conditions or any of them upon which said two years road sentence is suspended, capias and mittimus shall issue at term and he shall serve said two years road sentence in full.

"It is Further Ordered that this judgment be recorded in the minutes of this Court and that the Clerk forthwith forward a copy of the same to the Probation Officer of this District. R. Hunt Parker, Judge Presiding."

"The Court, in its discretion, modified the judgment in the second count in this respect: As to the second count in the Bill of Indictment the judgment of the Court is that the defendant Joseph Calcutt be confined in the common jail of Wake County for a term of two years. The change being from 18 months to two years. The Court, in its discretion, further modified the second condition of probation by adding thereto the following language, to-wit, 'and that he shall not sell nor dispose of nor place any of these machines in North Carolina.' This modification done in open Court in the presence of the defendant Joseph Calcutt and his counsel Messrs. Clyde A. Douglass and Wilbur Bunn. R. Hunt Parker, Judge Presiding."

Agreed statement of case on appeal: "This Criminal action was called for trial at the December Term, 1940, of Wake Superior Court. The defendant was present in the court and through his attorneys, Clyde A. Douglass and J. W. Bunn, entered a plea of guilty. It was admitted by the defendant Joseph Calcutt that he is the sole owner of the Vending Machine Company of Fayetteville, which is a trade name and not a corporation or association."

At the November Term, 1940, of Wake County Superior Court, the grand jury returned a true bill of indictment containing two counts against the defendant. In the *first count* of this bill of indictment the defendant was charged with the ownership, sale, transportation, lease, etc., of slot machines and devices prohibited by law. In the *second count* of the bill of indictment the defendant was charged with the operation

of illegal slot machines. The defendant made no motion to quash the bill of indictment, but, on the contrary, entered a general plea of guilty to all the allegations contained in the indictment.

It appears from the evidence offered by the State and by the defendant that the defendant has been engaged in the coin slot machine business in the State of North Carolina for a period of about 25 years. During this period of time the defendant has been arrested in North Carolina about twenty times for violation of the slot machine laws and paid fines in various amounts in these cases. The gross receipts realized by the defendant from his slot machine business for the year 1937 amounted to $1,327,785.40. For the year 1938, $1,379,241.13, and for the year 1939, $1,847,718.15. His legal expenses alone during the three years above mentioned amounted to $73,000.00. This does not include the amounts spent in attempting to secure legislation favorable to the defendant's business. The defendant had as his representative in Wake County one J. N. Finch, and through Finch slot machines were placed in various places of business, with the understanding that the defendant would pay any fine or costs in event these various persons were indicted under the provisions of the slot machine laws.

During the time evidence was being taken in this case, the officers of the law, under orders and instructions of the presiding judge, seized several slot machines in the city of Fayetteville, the home of the defendant. These machines were brought into court and it appeared that some of them were what is known as "one-armed bandits." Some of these machines were owned by the defendant and are illegal under the provisions of any of the laws enacted by the General Assembly of North Carolina relative to slot machines.

From the evidence contained in the record in this case, it clearly appears that the defendant has for many years been the biggest slot machine operator in the State of North Carolina, and that during these years he has used his own brain and the brains of the various members of his organization in formulating plans and schemes, not only to secure legislative sanction of the slot machine business, but to devise and formulate schemes to evade and disregard the laws of the State of North Carolina regulating and prohibiting the operation of slot machines. This is clearly shown by the fact that during the years 1937 and 1938, when the Flanagan Act was without question in full force and effect, the defendant's income from the slot machine business was over a million dollars for each of said years. When the defendant entered his plea of guilty to the bill of indictment contained in the record, he admitted he had violated every provision of the Slot Machine Act of 1923, and of the Flanagan Act, and the evidence bears out the fact that the defendant was not mistaken when he admitted these various violations of the law. The

machines distributed by the defendant were of various types, the majority being clearly illegal under any of the slot machine laws, and even those about which there could be some doubt were so constructed as to be easily changed into what everyone knew to be an illegal machine with practically no effort. The whole record shows an absolute disregard of the plain provisions of the law. The evidence justifies the judgment and the sentence.

I. *The indictment charges more than one offense.* One of the principal arguments advanced by the defendant to establish the invalidity of the judgment in the instant case is that the bill of indictment, although containing two counts, really charges but one offense and, therefore, will not support the separate sentences imposed under the two counts. I think that the bill of indictment charges separate offenses in separate counts for which separate punishment may be imposed.

A. *The first count.* The first count in the indictment is couched in the language of the Flanagan Act. Public Laws of 1937, ch. 196. The description of the machines with which this count is concerned follows the definition of illegal machines contained in section 3 of the act, and under the decision in *S. v. Abbott,* 218 N. C., 470, these were illegal machines.

It is charged in the indictment, *supra,* that the defendant did "own, store, keep, possess, sell, rent, lease, let on share, transport and offer to sell, rent, lease and let on share for the purpose of operation in the said County of Wake" certain slot machines of the type referred to above. It will be noted that the language of this portion of the indictment is patterned after section 1 of the Flanagan Act, which provides: "That it shall be unlawful to manufacture, own, store, keep, possess, sell, rent, lease, let on shares, lend or give away, transport, or expose for sale or lease, or to offer to sell, rent, lease, let on shares, lend or give away, or to permit the operation of, or for any person to permit to be placed, maintained, used or kept in any room, space or building owned, leased or occupied by him or under his management or control, any slot machine or device."

Since each of the Acts mentioned in section 1 is made unlawful and the violation of any of the provisions of the Flanagan Act is made a misdemeanor by section 6, the result is that the statute creates, not *one* offense which may be evidenced in a variety of ways, but a *number* of *distinct* and *separate* offenses, each of which constitutes a misdemeanor.

It is true that some of the infractions of section 1, for example, keeping and possessing, may amount to the same thing. An offer to sell may be included in a consummated sale so as to preclude a punishment for both. However, there can be no doubt that infractions such as manufacture, ownership, sale, lease, transportation, and permitting operation

on one's premises are separate offenses for which separate punishments may be imposed. Such a construction of the Flanagan Act as that suggested above finds support in a similar construction placed on section 3411 (b) of the Consolidated Statutes, which makes it illegal to "manufacture, sell, barter, transport, import, export, deliver, furnish, purchase or possess any intoxicating liquor."

In *S. v. Jarrett,* 189 N. C., 516, this Court held that possession and delivery of intoxicating liquors were separate offenses under the statute, and that separate punishments could be imposed for each when both were charged in the same warrant and the defendant was convicted. Later, in *S. v. Moschoures,* 214 N. C., 321, the defendant having pleaded guilty to a warrant charging unlawful possession and sale of intoxicating liquors, it was held that separate sentences could be imposed for each offense. From the holding of this Court it seems evident that—exclusive of offenses which were included in, or the same as, other offenses—the *first* count of the bill of indictment charged the defendant with at least four separate and distinct offenses, viz.: the ownership, sale, lease, and transportation of illegal slot machines.

Ordinarily, it is bad pleading to charge more than one offense in the same count of the bill of indictment, although this rule is subject to exceptions. *S. v. Dale,* 218 N. C., 625. However, an objection to a bill of indictment on the ground of duplicity must be seasonably made; and it is well settled that the defect is waived if the defendant fails to move to quash the indictment before pleading. *S. v. Hart,* 26 N. C., 246; *S. v. Simons,* 70 N. C., 336; *S. v. Hart,* 116 N. C., 976; *S. v. Burnett,* 142 N. C., 577; *S. v. Beal,* 199 N. C., 278.

The defendant has waived the right to object to duplicity in the first count by failing to move to quash. The result is that this count charges him with the four distinct offenses of possession, sale, lease, and transportation as effectively as if they had been set out in separate counts. By his plea the defendant has confessed that he is guilty of each of them.

*B. The Second Count.* The second count of the bill of indictment is couched in the language of chapter 138 of the Public Laws of 1923, section 1 of which provides: "That it shall be unlawful for any person, firm or corporation to operate, keep in his possession or in the possession of any other person, firm or corporation, for the purpose of being operated, any slot machine that shall not produce for or give to the person who places coin or money, or the representative of either, the same return in market value each and every time such machine is operated by placing money or coin or the representative of either therein." Section 5 of the Act is as follows: "That a violation of any of the provisions of this Act shall be a misdemeanor punishable by a fine or imprisonment, or, *in the discretion of the court, by both.*" (Italics mine.)

It is alleged in the second count that Joseph Calcutt, individually, and Joseph Calcutt, trading as the Vending Machine Company, did "operate, keep in their possession or in the possession of another for the purpose of being operated" certain slot machines answering the description in the 1923 Act. The effect of this count is to charge the offenses of unlawful operation and unlawful possession of slot machines, with any objection to the count on the ground of duplicity being waived by the defendant's plea of guilty.

The defendant contends that this count does not charge any criminal offense for the reason that the 1923 Act on which it is based has been repealed. He argues that, since Public Laws of 1935, chapter 37; Public Laws of 1935, chapter 282; and Public Laws of 1937, chapter 196, each deals comprehensively with the subject of slot machines, the 1923 Act is repealed by implication, although none of the later acts contains an express repealing clause.

This position is untenable, first, because implied repeals are looked upon with disfavor. In Crawford, Statutory Construction, it is stated, at page 630, that: "As is thus apparent, the courts do not look with favor upon implied repeals, and the presumption is always against the intention of the Legislature to repeal legislation by implication. The absence of an express provision in a statute for the repeal of a prior law gives rise to this presumption, . . . ." It is stated again, at page 631, that: "The inconsistency or repugnancy between two statutes necessary to supplant or repeal the earlier one, must be more than a mere difference in their terms and provisions. There must be what is often called 'such a positive repugnancy between the provisions of the old and the new statutes that they cannot be reconciled and made to stand together.' In other words, they must be absolutely repugnant, or irreconcilable. Otherwise, there can be no implied repeal, as we have pointed out in the preceding section, for the intent of the Legislature to repeal the old enactment is utterly lacking. Since there is a presumption against an implied repeal, and since the court will seek to avoid such a repeal by any fair and reasonable construction, the inconsistency must be clear, manifest and irreconcilable." The principle that a later statute will not, by implication, repeal an earlier one dealing with the same subject matter unless they are irreconcilable is the law in North Carolina. S. v. Biggers, 108 N. C., 760 (764); Bramham v. Durham, 171 N. C., 196 (198); S. v. Johnson, 171 N. C., 799 (801).

The rule is stated by Justice Adams in Story v. Commissioners., 184 N. C., 336 (341), as follows: "The repeal of statutes by implication is not favored. The presumption is against the intention to repeal where express terms are not used, and it will not be indulged if by any reasonable construction the statutes may be reconciled and declared to be operative without repugnance." S. v. Foster, 185 N. C., 674 (677).

The fact that a later statute covers the whole subject matter of an earlier one does not result in the repeal of the earlier one.    To this effect *Justice Hoke* quotes from Cyc., with approval in *State Sanatorium v. State Treasurer,* 173 N. C., 810 (813) : "In 36 Cyc., *supra,* it is further said : 'When two statutes cover, in whole or in part, the same subject-matter, and are not absolutely irreconcilable, the court will, if possible, give effect to both.' "

The defendant's contention that the 1923 Act has been repealed is also untenable for the reason that a similar contention has been rejected by this Court in *S. v. Humphries,* 210 N. C., 406.    In 1935, the General Assembly passed two different statutes, both of which comprehensively regulated slot machines.    The provisions of the two acts were strikingly similar.    The defendant contended that, since the second act, Public Laws of 1935, chapter 282, covered the whole field, the earlier act, Public Laws of 1935, chapter 37, was repealed.    This Court held that the two statutes were *in pari materia* and that they remained side by side in full force and effect.    Speaking for the Court, *Justice Devin* said (at p. 413) : "The rule is that if two statutes cover the same matter in whole or in part, and are not absolutely irreconcilable, it is the duty of the Court to give effect to both (Black Int. Laws, p. 325), and the later act does not repeal the earlier.    *S. v. Broadway,* 157 N. C., 598; *Castevens v. Stanly County, supra* (209 N. C., 75).    So that these two acts take their places *with the other statutes* and enactments of the General Assembly, emphasizing the settled policy of this State to outlaw the devices described in the bill of indictment under which this defendant was convicted.    We hold that the defendant might well have been indicted under either act, or by a bill charging in more concise language the possession of an unlawful slot machine in violation of the statutes in such cases made and provided."    (Italics mine.)

If the fact that the second 1935 Act covered the whole field of slot machine regulation did not cause the earlier 1935 Act to be repealed, there is no more reason why it should have resulted in the repeal of the 1923 Act.    This is recognized in the passage quoted above.    When *Justice Devin* stated that the two 1935 Acts took their place with the other statutes relating to slot machines, he had reference to the 1923 Act, and considered that act remained in force.    The 1937 Flanagan Act no more completely preëmpts the entire field of slot machine regulation than did the second 1935 Act; and, if that act did not repeal prior legislation, it cannot be consistently held that the Flanagan Act did.    The 1923 Act is not inconsistent with the Flanagan Act; the latter merely goes further. As the Flanagan Act does not expressly make it unlawful to "operate" slot machines, and the 1923 Act (Public Laws of 1923, chapter 138, section 1) does, it is not improbable that the Legislature understood that

this particular offense should be governed by the 1923 Act alone and be subject to the more severe punishment therein prescribed. Certainly, under the decisions of this Court relating to repeals by implication, I think it reasonable to hold that the 1923 Act remains in effect and that, when a given act happens to constitute a violation of this and other statutes, the solicitor may elect under which he will proceed.

*C. Separate Punishments.* Although the defendant contends that the bill of indictment charges only one offense, it is apparent from the foregoing decisions that it charges not one, but many offenses. Some of the offenses may be identical with others, and some may be merged in others, but those which, under each count, are separate and distinct may be listed as follows: *First Count:* Ownership, Sale, Lease, Transportation. *Second Count:* Operation, Possession. The defendant by his plea of guilty has admitted his guilt and stands convicted of every one of them. He has waived any objection which he might have made to the charging of more than one offense in a single count. This being true, the court could properly have imposed separate sentences for each offense. It is folly for the defendant to complain because two sentences were imposed, when the court would have been justified in imposing six.

The court having imposed a single sentence under the first count instead of imposing sentences severally for the offenses charged therein, the sentence on this count should be upheld if supported by the plea of guilty to any one of the offenses charged. The same is true of the sentence under the second count. This principle finds recognition in the decisions of this Court.

In *S. v. Miller,* 29 N. C., 275, the defendant was tried and convicted under a two-count bill of indictment, one count being good, the other, bad. The judgment of the court below was affirmed because supported by the good count. To the same effect is *S. v. Sprouse,* 150 N. C., 860. Similarly, where defendants have been tried on indictments containing good and bad counts, general verdicts have been held to relate to and be supported by the good counts. *S. v. Smiley,* 101 N. C., 709; *S. v. Toole,* 106 N. C., 736; *S. v. Lee,* 114 N. C., 844; *S. v. Avery,* 159 N. C., 495; *S. v. Coleman,* 178 N. C., 757 (760); *S. v. Maslin,* 195 N. C., 537.

The defendant's contention that only one sentence should have been imposed is not strengthened by the argument that possession, which is charged in the second count, is merged in ownership or some other offense in the first count. If possession were merged in an offense in the first count, the charge of operation would still support the sentence on the second count. Furthermore, if the punishment under the second count should be regarded as a punishment for possession and the result should be to preclude punishment for ownership under the first count; the punishment under the first count would still be supported by the charges of sale, lease, or transportation under the first count.

The reasoning advanced by the State in justification of the separate sentences on the two counts of the bill of indictment seems to have been accepted by the United States Circuit Court of Appeals for the Second Circuit in *United States v. Busch,* 64 F. (2d), 27. In that case the defendant had been indicted for violation of the Federal narcotic laws. The indictment contained three counts: the first for concealing heroin downstairs in a building; the second for concealing cocaine and heroin upstairs in a desk, and the third for conspiracy. After a conviction, the trial court imposed separate sentences on all three counts. The appellate court approved these sentences, taking the position that, even if the first and second counts overlapped in charging concealment of heroin, separate sentences could be imposed because the second count also charged concealment of cocaine, which was a separate offense.

The defendant's contention that the bill of indictment will not support any judgment because the statutes under which the two counts were drawn authorize different punishments is entirely without merit. The cases which he cites, *S. v. Lawrence,* 81 N. C., 522, and *S. v. Goings,* 98 N. C., 766, were decided prior to the enactment of the North Carolina statute regulating joinder and consolidation in criminal cases. This statute, C. S., 4622, was enacted in 1917, and its effect was to permit charges relating to the same transaction or the same series of transactions to be joined in one indictment and to permit consolidation where separate bills of indictment embodying such charges have been returned.

*Justice Varser* stated the present rule as to joinder in *S. v. Malpass,* 189 N. C., 349 (351), as follows: "The rule in the State now is that different counts relating to the same transaction, or to a series of transactions, tending to one result, may be joined, although the offenses are *not* of the same grade. *S. v. Lewis,* 185 N. C., 640; *S. v. Burnett,* 142 N. C., 577; *S. v. Howard,* 129 N. C., 584; *S. v. Harris,* 106 N. C., 683; *S. v. Mills, supra* (181 N. C., 530); C. S., 4622."

Under the statute it is even permissible to join a count for a misdemeanor with one for a felony in the same indictment. *S. v. Lewis,* 185 N. C., 640.

When charges of distinct offenses have been joined or there has been a consolidation under C. S., 4622, separate punishments may be imposed upon the different counts. *S. v. Mills, supra; S. v. Harvell,* 199 N. C., 599.

II. *The Prison Sentences Imposed Under the First and Second Counts Are Not Excessive.* If the bill of indictment charges separate offenses separately punishable under the first and second counts, it follows that the judgment in the instant case should be affirmed if the sentences imposed are authorized by law and are not excessive.

Section 6 of the Flanagan Act, chapter 196 of the Public Laws of

1937, authorizes punishment for offenses under that act *by fine or imprisonment in the discretion of the court.* Section 5 of chapter 138 of the Public Laws of 1923 authorizes punishment of offenders under that act *by fine or imprisonment, or both, in the discretion of the court.*

The first count charges violations of the Flanagan Act. A sentence of one year was imposed. The second count charges violation of the 1923 Act. A two-year suspended sentence was imposed. As neither statute prescribes a maximum period of imprisonment, these sentences must be regarded as valid unless sentences of one and two years are so excessive as to violate the constitutional prohibition against cruel and unusual punishments. The propriety of these sentences is established by the decisions of this Court which hold that a sentence of imprisonment for two years for a misdemeanor is not a cruel and unusual punishment. *S. v. Apple,* 121 N. C., 584; *S. v. Farrington,* 141 N. C., 844.

In *S. v. Moschoures,* 214 N. C., 321, the defendant pleaded guilty to two misdemeanors. On the first count a sentence of imprisonment for eighteen months was imposed. On the second a suspended sentence for the same period commencing at the expiration of the first was imposed. The Court upheld these sentences, stating at page 322: "The defendant also contends that these sentences inflicted cruel and unusual punishment in violation of Article I, sec. 14, of the Constitution of North Carolina, with which contention we likewise cannot concur. 'It is equally well settled that when no time is fixed by the statute, this Court will not hold imprisonment for two years cruel and unusual.' *S. v. Farrington,* 141 N. C., 844; *S. v. Daniels,* 197 N. C., 285, and cases there cited."

III. *The Judgment is NOT an Alternative or Conditional One and is NOT Void for Indefiniteness; It Is a Valid Judgment Suspended on Reasonable Conditions.*

The defendant's contention that the judgment pronounced on the second count of the bill of indictment is an alternative judgment not permitted by law is clearly without merit. The judgment is unquestionably a valid imposition of a two-year jail sentence, within the maximum limit permitted for the violation of a misdemeanor, suspended upon certain enumerated conditions, and it also places the defendant on probation. As such, it is sanctioned by statute and all the current decisions of this State. Public Laws of 1937, ch. 132, secs. 1, 2, 3 (Michie's N. C. Code, 1939, secs. 4665 [1]-4665 [3]) ; *S. v. Hardin,* 183 N. C., 815; *S. v. Wilson,* 216 N. C., 130. That the judgment does just this may be readily ascertained from its unmistakable language. After stating that the judgment of the court on the second count in the bill of indictment is "that the defendant, Joseph Calcutt, be confined in the common jail of Wake County for a term of two years to be assigned to work the public roads under the direction of the State Highway & Public Works Com-

mission," the court provides in the next paragraph: "It is *further Ordered and Decreed* that the road sentence in the second count in this case which is to begin at the expiration of the twelve months road sentence in the first count which the defendant, Joseph Calcutt, is to serve be, *and the same is hereby suspended, and the defendant is hereby placed on probation* for a *period of three years* after his twelve months road sentence imposed in the first count in the Bill in this case has been served; *under the supervision of the North Carolina Probation Commission and its officers* subject to the provisions of the laws of this State and the rules and orders of said Commission and its officers with leave that execution may be prayed at any time during the period of probation; that as a condition of probation the said defendant, Joseph Calcutt, shall :" etc.   (Italics mine.)

Immediately following this part of the judgment the conditions of its suspension are annexed. It is difficult to imagine how this judgment can be called an alternative judgment. Of course, in a broad or catholic sense as contra-distinguished from a legal sense, all suspended judgments are alternative. That is, the defendant may elect to accept the terms of the suspension rather than to undergo the full vigor of the judgment. This, very obviously, does not constitute an alternative judgment prohibited by our decisions. The distinction is lucidly and succinctly explained by *Seawell, J.,* in *S. v. Wilson,* 216 N. C., 130. In speaking of a judgment suspended on the condition of the payment of a fine and on the further condition that the defendant remain law-abiding for a term of five years, it is stated, at page 133 : "Nor is the judgment alternative, although an alternative is presented to the convicted defendant whether he shall remain a good citizen or be subject to imprisonment. An alternative judgment is a judgment 'for one thing or another' (33 C. J., p. 1197), which does not specifically and in a definite manner determine the rights of the parties. A judgment is said to be alternative because it requires the performance of one or more alternative propositions and is incapable of enforcement because the selection involves a function which may be performed only by the court, and such a judgment is void. *Strickland v. Cox,* 102 N. C., 411, 9 S. E., 414; *S. v. Hatley,* 110 N. C., 522, 14 S. E., 751. With some exceptions, not necessary to consider here, it must be sufficiently definitive to permit enforcement ministerially by its inherent directions. The sentence before us meets this test."

As has been shown, the defendant was placed on probation under the provisions of the probation statute and placed under the supervision of the North Carolina Probation Commission. The judgment entered in the instant case is specifically provided for and contemplated by the Probation Act of 1937. Section 1 of chapter 132 of the Public Laws of 1937 provides as follows: "After conviction or plea of guilty or *nolo*

*contendere* for any offense, except a crime punishable by death or life imprisonment, the judge of any court of record with criminal jurisdiction may suspend the imposition or the execution of a sentence and place the defendant on probation or may impose a fine and also place the defendant on probation."

Section 3 of this act sets out several conditions which may be imposed for such suspension. *S. v. Bennett,* 20 N. C., 170, chiefly relied on by the defendant in support of his position that the judgment in the case at bar is alternative, and the other early cases cited in his brief, have in effect been overruled by later and more recent decisions which recognize the right of the trial court to suspend judgment on certain conditions aside from the probation statute above referred to. In *S. v. Hardin,* 183 N. C., 815, it is stated by *Hoke, J.,* at page 818: "The power of a court having jurisdiction to suspend judgment on conviction in criminal cases for determinate periods and for a reasonable length of time is fully recognized in this jurisdiction. *S. v. Hoggard,* 180 N. C., 678; *S. v. Greer,* 173 N. C., 759; *S. v. Tripp,* 168 N. C., 150; *S. v. Everitt,* 164 N. C., 399; *S. v. Crook,* 115 N. C., 760."

The transition from the early holdings that a suspended judgment was void as an alternative one to the recent decisions fully recognizing and sanctioning the rights to impose such a judgment, is noted in 15 N. C., Law Review, at page 345, as follows: "The legislature in its early days of power undertook to prescribe the punishment for crime with some exactness and to make the judge the mouthpiece to pronounce it. Gradually it began merely to fix the limits of punishment, and allowed the judge within these limits, freedom to fix the punishment in each particular case. But the suspended sentence did not meet with much favor in North Carolina in the beginning. In *S. v. Bennett, supra,* the Supreme Court expressed the opinion that it was 'irregular to annex to the sentence any condition for its subsequent remission,' and in *S. v. Hatley, supra,* 'Such course is not infrequent, and though dictated by the best intentions to benefit the public as well as offenders, is not to be commended.' In 1894, the Court underwent a change of heart and in *S. v. Crook, supra,* termed the practice of suspending sentences 'very salutary' and thus marked a turning point in the administration of criminal law."

In the case of *S. v. Schlichter,* 194 N. C., 277, execution of a judgment of from three to five years was suspended on condition that the defendant pay to receivers of a bank the sum of $8,830.00 with interest. This was held to be a valid and not an alternative judgment.

In *Myers v. Barnhardt,* 202 N. C., 49 (1932), it was said that a judgment that defendant be fined and imprisoned, but that he be released upon the payment of the fine and filing a bond to indemnify prosecuting

witnesses, was not a judgment void for alternativeness. The judgment in the instant case is the same in effect. It is a judgment suspended on the payment of a fine and other reasonable conditions.

This Court held in *S. v. Ray,* 212 N. C., 748 (1938), that execution of a judgment may be suspended on the condition that the defendant pay certain sums for the benefit of a person wronged by him, and upon his failure to pay such money, the sentence may be put into effect. At p. 750, it is said: "The power of the Superior Court to continue the prayer for judgment and to suspend the execution of a judgment, upon conditions, in proper cases and upon terms that are reasonable and just, and thereafter, upon determination that the conditions had been breached, to impose sentence and execute the judgment, has been upheld by this Court in numerous cases. *S. v. Hilton,* 151 N. C., 687, 65 S. E., 1011; *S. v. Everitt,* 164 N. C., 399, 79 S. E., 274; *S. v. Burnett,* 174 N. C., 796, 93 S. E., 473; *S. v. Hardin,* 183 N. C., 815, 112 S. E., 593; *S. v. Shepherd,* 187 N. C., 609, 122 S. E., 467; *S. v. Edwards,* 192 N. C., 321, 135 S. E., 37; *Berman v. U. S.,* 82 Law Ed. (U. S.), 212."

The judgment in the *Ray case, supra,* is substantially similar to that in the instant case. Thus, it is evident that the judgment and suspended sentence upon conditions here under consideration are expressly sanctioned by statute and approved by the authorities. The terms of the suspension are certain and definite. If the defendant elects to fulfill the conditions imposed, he may avoid the execution of the sentence; otherwise, under the authorities, it may be put into effect. He is not required to guess at the meaning of the judgment or the conditions. The language is clear and unambiguous; his duty is plain.

The statement contained in the portion of the judgment placing the defendant on probation, to the effect that "execution may be prayed at any time during the period of probation," is not susceptible of the misinterpretation put upon it by the defendant. It very obviously means that execution may be prayed at any time during the period of probation (three years) upon the violation of any of the conditions of the terms of the suspension. The order states that the judgment is suspended and the defendant is placed on probation "subject to the provisions of the laws of this State." The Probation Act plainly provides, in section 4, that "At any time during the period of probation or suspension of sentence, the Court may issue a warrant and cause the defendant to be arrested for violating any of the conditions of probation or suspension of sentence." Public Laws of 1937, ch. 132, sec. 4. His Honor was stating the time limit during which the sentence might be put into effect, and was not attempting to place an arbitrary power in the trial court to pray execution regardless of the fulfillment of the conditions.

IV. *The Conditions Upon Which the Judgment on Second Count of the Bill of Indictment is Suspended are Valid.*

*A. The Fine of $10,000.00 is a Valid Condition for the Suspension of the Judgment.*

The order of the court below suspending the judgment states that as one of the conditions of the suspension and probation the defendant shall: "1. Pay a fine of $10,000.00 and the costs of this action in cash at this term." Very clearly this is one of the permitted conditions for the suspension of the sentence imposed on the second count, and not a part of the punishment for the violation of the slot machine laws. The language of the order and judgment admits of no other interpretation. The power to impose such a condition is specifically granted the trial court by the Probation Act. Section 3 of chapter 132 of the Public Laws of 1937 provides: "The Court shall determine and may impose, by order duly entered, and may at any time modify the conditions of probation and may include among them the following, or any other: That the probationer shall: . . . (naming other conditions) . . . (g) Pay a fine in one or several sums as directed by the Court."

The power to impose a fine under any circumstances does not exist unless the criminal statute under which the judgment is imposed permits it, as was pointed out in *S. v. Wilson,* 216 N. C., 130. The court in the instant case had plenary power to enforce both the sentence of imprisonment and the fine. As has been pointed out, the second count in the bill of indictment was drawn under, and couched in, the language of chapter 138 of the Public Laws of 1923. This slot machine statute provides in section 5, that the violation of its provisions "shall be a misdemeanor punishable by a fine or imprisonment, or, in the discretion of the Court, by both." (Public Laws of 1923, ch. 138, sec. 5.) However, the *Wilson case; supra,* is distinguishable from the instant case in that the judgment therein did not place the defendant on probation and thereby bring the judgment within the empowering provisions of the Probation Act. Therefore, the question of whether or not the trial court had the power to impose a fine under the penal provisions of the slot machine law pleaded guilty to, is rendered purely academic in the instant case. The court had the power to impose a fine as a condition of the probation under the probation laws of this State, aside from the criminal statute violated, and it has exercised that power.

Since it is plain, therefore, that a fine could be validly imposed, the sole remaining question to be considered as to the fine, is: Is it proper and reasonable, so that it does not impinge Article I, section 14, of the Constitution, which states: "Excessive bail should not be required, nor excessive fines imposed, nor cruel or unusual punishment inflicted."

It is well settled in this jurisdiction that where the Legislature prescribes a fine or other punishment for a crime, and does not fix definite limits as to type or amount, the amount to be imposed rests in the discre-

tion of the trial court judge, and will not be reviewed or disturbed unless there is a plain and palpable violation of the above constitutional provision. *S. v. Pettie,* 80 N. C., 367; *S. v. Farrington,* 141 N. C., 844; *S. v. Dowdy,* 145 N. C., 432; *S. v. Woodlief,* 172 N. C., 885; *S. v. Jones,* 181 N. C., 543.

This rule is plainly stated by *Walker, J.,* in *S. v. Woodlief, supra,* at p. 891, as follows: "We are not prepared to say that this Court cannot review the judge, as to the *quantum* of punishment, even where there is a limit set to the exercise of his discretion; but if the right exists, we will not do so except in a plain case, where the violation of the constitutional provision is palpable, and not involved in any doubt—a case not likely to occur."

In the case of *S. v. Pettie, supra, Dillard, J.,* speaking for the Court and quoting from *S. v. Driver,* 78 N. C., 423, stated, at p. 369: "What the precise limit is, cannot be prescribed. The Constitution does not fix it, and we cannot fix it, and it ought not to be fixed. It ought to be left to the judge, who inflicts it under the circumstances of each case, and it ought not to be interfered with except when the above is palpable." And further, at page 370: "In respect to the kind and *quantum* of the punishment, regard is always to be had to the circumstances as developed on the trial; and the judge presiding has the opportunity to know the case better than an appellate tribunal."

The fine imposed in the instant case, as a condition for probation, was amply justified by the circumstances in the case and did not amount to an abuse of discretion. It is not open to question but that the trial court may take into consideration any and all aggravating circumstances in any particular instance, and such may form the background or basis for the punishment of a particular offender. It goes without saying such may be considered in deciding what is to be the limit or amount of a condition for the suspension of a judgment. *S. v. Reid,* 106 N. C., 714; Coats, "Punishment for Crime in North Carolina," 17 N. C. Law Rev., 224.

The circumstances taken into consideration by the judge below to form the basis for imposing such a fine are ample and sufficient to support his discretion as to the amount. There was evidence taken at the trial tending to show that the defendant is (or was) the largest distributor of slot machines in the country; that the defendant was the owner of a slot machine empire which grossed in a three-year period over $4,500,000.00; that actually while he was in court being tried for a violation of the slot machine laws of the State, and claiming that he had conscientiously endeavored to operate only legal machines, "one-armed bandits" paying off in cold cash were being operated by him in Fayetteville, North Carolina—manifestly, a shining example of inconsistency, and that he has

STATE v. CALCUTT.

engaged in the slot machine business for a number of years, and has paid fines in some twenty to twenty-one cases; and that he has paid in a three-year period legal fees amounting to $73,000.00. The defendant testified in open court that he operated at least 40% of the slot machines being operated in the State.

The argument advanced by the counsel for the defendant in his brief, that Calcutt is unable to pay such a fine because of the amount of income tax paid, becomes unconvincing in view of the testimony of the defendant's own auditor. He testified that "The question of legal expense charged in there covers lawyers' fees, *Court costs and things like that,* in all of the five or six States." A fine in the amount of that imposed in the instant case would be charged off as a legal expense and thereby escape income taxation; a small item of expense in a business of the magnitude of the defendant.

That the court took these circumstances into consideration in formulating the judgment appears from his finding. In the first paragraph of the judgment it is stated: "The defendant, Joseph Calcutt, trading as the Vending Machine Company heretofore at this term of Court, entered a plea of guilty to the Bill of Indictment in this case, which Bill of Indictment has two counts, and it further appearing to the Court that the defendant admitted in open Court that he was the sole owner of the Vending Machine Company of Fayetteville, which is his trade name, and that he has been in the slot machine business for years and has paid fines in some 20 to 21 cases, and it further appearing to the Court from his income tax returns that his business during 1937, 1938, and 1939, has grossed in excess of Four and a half Million Dollars, and that during said time he has paid over $73,000.00 for legal expense, and it further appearing to the Court that while he was being tried yesterday 'one-armed bandits,' *i.e.,* slot machines that paid off money, belonging to him, were being operated in Fayetteville, North Carolina."

Thus, it would seem that the fine imposed as a condition in the case at bar is amply justified, and in view of the circumstances appearing as a matter of record, is very reasonable. Nor is the Court without authority for requiring the payment of a sum as large as the fine complained of.

In *S. v. Schlichter,* 194 N. C., 277, the defendant was required, upon conviction of violating the banking laws, to pay to the receiver of the bank $8,830.00 with interest, in addition to $12,000 already paid, as a condition for the suspension of a three-year sentence. This condition was approved in the opinion. See, also, *S. v. Miller,* 94 N. C., 902. The fine imposed on the defendant should not be disturbed.

*B. Conditions 2, 3 and 6 Are Valid.*

Conditions 2, 3 and 6, requiring the defendant to dispose of all machines violating the slot machine laws of the State, and requiring the

defendant to refrain from violating the slot machine law or any State law, are undeniably valid. The defendant concedes them to be so in his brief. They are sanctioned by the decisions of this Court. *S. v. Wilson*, 216 N. C., 130, and cases there cited. N. C. Code, 1939 (Michie), sec. 4435.

*C. Condition 4 Is Not Invalid.*

The fourth condition upon which the execution of the sentence on the second count was suspended was that during the period of suspension the defendant should refrain from political activity. This condition is assailed on the ground that it has the effect of disfranchising the defendant for the commission of a misdemeanor. It should be noted that it is not expressly provided that the defendant shall not vote.

The evidence showed that the defendant, during the 1937 and 1939 Sessions of the General Assembly, had maintained headquarters in Raleigh, had hired agents to engage in extensive lobbying, and had spent large sums of money to influence legislation relating to slot machines. In imposing the condition against political activity, the judge undoubtedly had this evidence in mind. It was natural that he should consider it harmful to the best interests of the State for a confessed law-breaker, who, by admission of wholesale violations of the slot machine laws, had evidenced his contempt for decent law enforcement, to be permitted, while at liberty under suspended sentence, to continue to bring such political and economic pressure to bear against the Legislature and other branches of government in the State. The condition, in view of this background, may reasonably be construed as prohibiting lobbying, campaigning, and other active political conduct rather than as taking away the right to vote. Upon the facts of this case, such a condition is not unreasonable.

As between a construction of the condition which would render it unreasonable and invalid and one which renders it reasonable and sustainable, it is submitted that the latter should prevail.

*D. Conditions 5, 7 and 8 Are Valid.*

The fanciful argument advanced by the defendant that because, as required by condition No. 5, he must "at all times remain under the supervision of the probation officer assigned to Wake County, and shall not request that this case be assigned to Cumberland County," he must remain in Wake County during his three-year period of probation, finds no support in reason or logic. This condition requires only that he remain under the supervision of the Wake County officer, not that he must reside in Wake County. He was tried in Wake County and it is a reasonable requirement that he be under the supervision of the officer assigned to this county. Actually, there is not a probation officer in each county. Each probation officer is assigned to a district comprised of several counties, and at present the probation officer assigned to the

district including Wake County lives in Durham. The Probation Act of 1937, Public Laws of 1937, chapter 132, section 8, provides, in part: "That probation officers appointed under this Act shall be assigned to serve in such courts or districts or otherwise as the Director of Probation may determine." There is no probation officer assigned to Cumberland County alone, and who resides therein. It is very probable that at the times the defendant would have to report to the officer in Wake County, such officer would be nearer to him than the officer assigned to the district including Cumberland County. Certainly the requirement that he be assigned to a probation officer in one county does not mean that he must reside in that county.

The requirement of condition No. 7 that the defendant "shall not change his address or leave the county or State without first securing the permission of his probation officer," also shows that it was not intended that he move his residence to Wake County and remain therein for the period of probation. The record shows that his Honor knew that the defendant's address at the time he was sentenced was in Fayetteville in Cumberland County. Hence the command that he not change his address or leave the county obviously and unquestionably referred to Cumberland County, and shows that it was not intended that he reside in Wake County. The power to require him to remain therein as a condition of the suspension is expressly conferred by subsection (f) of chapter 132 of the Public Laws of 1937. It states that the individual on probation may be required to "remain within a specified area." This is a very reasonable requirement and is not questioned by the defendant. He also concedes that if he is not required to remain in Wake County, condition No. 8 would be proper.

Condition No. 9, "That he shall appear with the probation officer of this county during the said three years of probation in open court at the May and November Term of this Court, and if he cannot satisfy the presiding Judge of those terms that he has not violated the conditions or any of them upon which said two years road sentence is suspended, capias and mittimus shall issue at term and he shall serve said two years road sentence in full," is a reasonable requirement, imposed to guarantee fulfillment of the other conditions. A similar requirement has already been passed on and approved by the court. *S. v. Hardin,* 183 N. C., 815.

If the court should find that one or more of the conditions upon which the sentence was suspended in this case are invalid, such finding would not invalidate either the sentence or the other valid conditions. They would still stand and be enforceable against the defendant. *S. v. Hatley,* 110 N. C., 522.

*V. The Order Modifying the Judgment Did Not Constitute Error.*

Under the decisions of this Court, it is within the discretion of the trial judge to modify a sentence imposed in a criminal case prior to the expiration of the term of court at which it is imposed if the sentence has not been executed. *S. v. Warren,* 92 N. C., 825 (827). The power to modify in such cases includes the power to increase the sentence. *S. v. McLamb,* 203 N. C., 442; *S. v. Godwin,* 210 N. C., 447.

*Devin, J.,* speaking for the Court in *S. v. Godwin, supra,* at p. 449, said: "Until the expiration of the term the orders and judgments of the court are *in fieri,* and the judge has power, in his discretion, to make such changes and modifications in them as he may deem wise and appropriate for the administration of justice, and to this end he may hear further evidence, in open court, both as to the facts of the case and as to the character and conduct of the defendant. *In re Brittain,* 93 N. C., 587; *S. v. Manly,* 95 N. C., 661; *S. v. Stevens,* 146 N. C., 679; *Cook v. Telegraph Co.,* 150 N. C., 428."

In the instant case, the judge made certain modifications in the sentence before the expiration of the term of court. The judgment as modified is one which conforms to the law of this State. The reasons for the modification do not appear of record, and it does not appear that defendant requested that they be stated. Where the record is silent, the defendant cannot reasonably expect this Court to attribute to the judge a frivolous motive such as to make his action constitute an abuse of discretion.

*VI. It Follows That Defendant's Constitutional Objections Are Without Merit and the Judgment Is Valid.*

The brief of the Attorney-General and his assistants is a masterpiece as to the law applicable to the facts in this case. It is carefully and thoroughly prepared and, after a painstaking examination of its contents, I quote from it copiously to sustain the judgment on the first count and to this dissent to the majority opinion on the second count.

The facts in the case show a persistent and lawless course on the part of the defendant, for years. He has defied the laws of his State, he has paid fines in the courts of his State for some 20 to 21 times and thereafter continued his lawless acts. It is to the everlasting credit of the solicitor that he brought the defendant to the bar of justice, before a judge who had the courage and backbone to so sentence the defendant (who pleaded guilty) and render a judgment which should break up this lawless slot machine and gambling business, corrupting the morals of the people, and which has brought millions of dollars to defendant through his nefarious business. His gross business during 1937, 1938 and 1939 was in excess of four and a half million dollars, and during that time he paid $73,000.00 in legal expenses. He employed lobbyists to persuade the General Assembly to enact laws to allow him to operate these slot

machines—"one-armed bandits." The record discloses that even a newspaper lauded his gambling machines and others used laudatory language.

These "one-armed bandits" even menace the courts. In a letter that Judge Henry L. Stevens, Jr., wrote to the State Bureau of Investigations, dated 8 March, 1940, is the following, in part: "I am now presiding in the Ninth Judicial District and there is a situation existing in Fayetteville that demands the help of your Bureau if we are to *prevent the flaunting of law and order.* There is an element in Cumberland County that has the idea that the laws of North Carolina do not apply to that; Slot Machines run wide open day and night and *they vary from simple pin board to the 'one-armed bandit.'* There are several emporiums in which there are located fifty to one hundred machines. Conditions are such and the views of the law enforcement agencies in that county are such that nothing will be done without the aid of your department. . . . I earnestly request that you assign a number of men to go into Fayetteville about three weeks from now with sufficient cash money to play the machines, having the men keep up with the amount spent in such manner which of course can be returned when the machines are confiscated, and round up every one of them and I will spend the week running the slot machine gamblers out of Fayetteville. *They have no regard for judges or officers of the law,* and I really want help but you must bear in mind if this information gets out in any manner or way, in the meantime, to any resident or official of that county that *your efforts will prove fruitless."* (Italics mine.)

The judge was mindful of his oath. Const. of N. C., Art. VI, sec. 7: "I do solemnly swear (or affirm) that I will support and maintain the Constitution and laws of the United States, and *the Constitution and laws of North Carolina* not inconsistent therewith, *and that I will faithfully discharge the duties of my office* as (Judge of the Superior Court), so help me, God." (Italics mine.) In consequence of this militant and praiseworthy letter, the agents of the North Carolina Bureau of Investigations made a thorough investigation. The report was headed: "Synopsis: The general conditions regarding slot machines and gambling in and around Fayetteville, N. C."

In their report it shows their visit to dozens of places where these "one-armed bandits" were operated. They found them in numerous places, and I give the report of one of these: "Visited a roadhouse located on Highway N. C. #301, on the road leading from Fayetteville to Lumberton. While there Agent Zimmerman played one slot machine, Serial No. 434373, winning fifty cents, and spent seventy-five cents. This debt was paid by a white girl behind the counter. As agents had been asked to particularly note the circumstances and conduct of those in and around the station, Agent would like to mention that on this visit

he counted ten women inside of the place and two on the outside talking to men in cars. There were fifteen very rough, tough and shabbily dressed men in and around the roadhouse; one Negro girl behind the counter smoking a cigarette and two men inside completely passed out. All had been drinking heavily and all were using very vile language. Two men were noted using the northeast end of the building, near the highway, as a toilet. While there a couple, man and a girl, were seen to leave the station and enter the back seat of a car parked off to the side and in the dark. . . . While standing in the door in conversation with a man whom Agent did not know, made the statement that he keeps three or four girls around there all the time just so the boys would come around." These roadhouses are in easy access of the soldiers at Fort Bragg.

In *Carpenter, Solicitor, v. Boyles,* who was convicted for running a similar kind of roadhouse, this Court sustained the conviction and said in that case (213 N. C., 432 [450]) : "Centuries ago the Almighty entered a judgment, 'destruction by fire,' against two cities in the plain of the Jordan. Today the fire of the law must sometimes be applied by upright citizens to the Sodoms and Gomorrahs that have sprung up along our highways, creating nuisances against public morals. In an age in which the respect for law and order has well-nigh withered away, the power of righteous indignation which springs from deep moral convictions, it is encouraging to find patient and long-forbearing, but upright, citizens aroused against cancerous growths on our social body. They will find the processes of the law ever ready and adequate for such social surgery, all too often necessary to the wholesome health of society."

These places where liquor-drinking, "one-armed bandits," drunkenness and lewdness run riot, not only trap the civilian population, but the soldiers at Fort Bragg, and are a menace to morals and decency. These traps to catch and tempt the unwary are open day and night and Sundays, too, and should be wiped out, or we will go like France.

It appears in the record that after paying licenses to the Revenue Department on a lawful machine, there was a trick device on the machine which enabled the lawful machines to be changed to "one-armed bandits," or illegal slot machines. It is refreshing and heartening to note the persistent efforts with which Judge Stevens, the Attorney-General and his assistants, the solicitor of the district and the judge holding the court below (who imposed the sentence after a plea of guilty), have tried to enforce this law, known as the Flanagan Act. This act was held in full force and effect in *S. v. Abbott, supra* (218 N. C., 470). At p. 480, the Court said: "The State long ago outlawed gambling by every species of games of chance, and, particularly, has passed comprehensive laws prohibiting the operation or possession of slot machines adaptable for that

purpose. These statutes have been upheld by this Court as within the police power of the State. *S. v. Humphries, supra* (210 N. C., 406); *Calcutt v. McGeachy,* 213 N. C., 1." Defendant owned and operated a big business, commercialized gambling in unlawful slot machines, which was a source of sure and steady profit.

In 24 Amer. Jurisp., p. 399 (400), it is said: "It is well settled that the police power of the state may be exerted to preserve and protect the public morals. It may regulate or prohibit any practice or business the tendency of which, as shown by experience, is to weaken or corrupt the morals of those who follow it or to encourage idleness instead of habits of industry. Whether gambling, in the various modes in which it is practiced, is demoralizing in its tendencies and, therefore, an evil which the law may rightfully suppress without interfering with any of those inherent rights of citizenship which it is the object of government to protect and secure is no longer an open question. Gambling is injurious to the morals and welfare of the people, and it is not only within the scope of the state's police power to suppress gambling in all its forms, but its duty to do so."

In the main opinion it is said: "It seems to have been overlooked on all hands that the privilege of probation, which the court clearly intended to offer the defendant pursuant to ch. 132, Public Laws 1937, is so conditioned as to be inconsistent with his right of appeal." I cannot see how this statement is tenable, under our statutes on the subject. N. C. Code, 1939 (Michie), sec. 4650, is as follows: "In all cases of conviction in the superior court for any criminal offense, the defendant shall have the right to appeal, on giving adequate security to abide the sentence, judgment or decree of the supreme court; and the appeal shall be perfected and the case for the supreme court settled, as provided in civil actions." Sec. 4654, *supra,* is as follows: "In criminal cases an appeal to the supreme court *shall not have the effect of vacating the judgment appealed from,* but upon perfecting the appeal as now required by law, either by giving bond or *in forma pauperis, there shall be a stay of execution during the pendency of the appeal.* The clerk of the superior court shall, as soon as may be after execution is stayed, as provided in this section, notify the attorney-general thereof. Said notice shall give the name of defendant, the crime of which he was convicted, and, if the statutory time for perfecting the appeal has been extended by the agreement, the time of such extension. If for any reason the defendant should wish to withdraw his appeal before the same is docketed in the supreme court, he may go, or be taken before the clerk of the superior court in which he was convicted, and said clerk shall enter such withdrawal upon the record of the case, and notify the sheriff, who shall proceed forthwith to execute the sentence." (Italics mine.)

I think the main opinion makes nugatory and wipes out the above section, which holds the judgment *in fieri* and maintains *in statu quo* the judgment appealed from. I see no conflict in the judgment of the court below with defendant's right of appeal. It is stayed until his appeal is passed on. If defendant intended to take such a position on appeal, he waived it by not bringing it to the attention of the court below when sentenced. If the judgment on appeal is affirmed the original stands. Sec. 4656, *supra,* says: "The clerk of the superior court, in all cases where the judgment has been affirmed (except where the conviction is a capital felony), shall forthwith on receipt of the certificate of the opinion of the supreme court notify the sheriff, who shall proceed to execute the sentence which was appealed from. In criminal cases where the judgment is not affirmed the cases shall be placed upon the docket for trial at the first ensuing term of the court after the receipt of such certificate." I think the law according to the above statutes has been consistently followed from time immemorial.

The majority opinion on this aspect is a new departure and I think contrary to the plain language of the statutes on the subject of appeal and allowed on a record, in which defendant showed defiance to the laws of his country founded on decency and good morals and pleaded guilty for so doing. For 20 to 21 times heretofore he has escaped with a fine, a kind of license to continue his unlawful business. At last, by continuing his nefarious business, which he pleaded guilty of, he came up before a judge that determined to stop this powerful, entrenched lawbreaker. The case goes back for judgment on the second count. I feel assured that the Superior Court judge will not overrule what has been done so well under the circumstances, by the able and courageous Judge R. Hunt Parker, in the court below.

By analogy I quote what is said in *Davis v. Land Bank,* 217 N. C., 145 (149): "It is well established in this jurisdiction that one Superior Court judge may not review the judgment of another Superior Court judge or restrain him from proceeding in a cause in which he has full jurisdiction," citing a wealth of authorities.

In this opinion I have been careful to base what I have written on the facts appearing in the record, and have written at length so that all the facts may be known in the persistent lawlessness of the defendant (as shown by the record), in violation of the laws of this State. I think from the facts as they appear of record that the fine of $10,000.00, and the conditions of the suspended judgment on the second count, are reasonable. If the defendant pays the fine and performs the conditions of the suspended sentence, he is relieved of future punishment. It is the certainty and not the severity of punishment that makes for law and order and orderly government.

As said in *S. v. Swindell,* 189 N. C., 151 (155) : "Though the punishment is great, the protection due to society is greater. The hope is to amend the offender, to deprive him of the opportunity to do future mischief, and, above all, an example to deter others."

DEVIN, J., concurring in part and dissenting in part: I concur in what is said in the majority opinion as to the judgment on the first count in the bill of indictment, but cannot agree with the disposition of the case on the second count.

I do not understand that the power of a Superior Court judge in suspending execution of a prison sentence and placing the defendant on probation is limited by all the provisions of the Act of 1937, ch. 132. It is in that act expressly stated "the court shall determine and may impose the conditions of probation." Certainly, the judge has the discretion and a wide latitude in imposing such conditions as from his knowledge of the case he deems just and proper in the administration of the criminal law.

Nor do I think the judgment imposing conditions upon which execution of prison sentence is to be suspended is inconsistent with the defendant's right of appeal. The judgment is entered with the knowledge that in North Carolina a defendant, whether he pleads guilty or is convicted, has unlimited right of appeal from a final judgment, though the judge may not expect him to avail himself of that right in a particular case. Every final judgment "in all cases" is subject to right of appeal, whether entered in open court or by notice subsequent to the adjournment of the court. I do not understand that there is anything in the probation statutes, or rules of law with respect to suspended sentences, which requires the defendant to waive his right of appeal. With great respect for the opinion of the majority, I cannot bring myself to agree with the view that the fact of an appeal from a judgment imposing a definite sentence, with provision that execution of the sentence be suspended upon certain conditions, in any event should be given the effect of vacating the judgment. I do not think it should be held that the mere exception to and appeal from such a judgment would destroy its vitality for the reason assigned in the opinion that the time fixed for the performance of certain conditions would pass before the appeal could be heard, thus preventing an election by the defendant, or that a serious conflict would be thereby caused, or that there is an inconsistency between the form of the judgment and the defendant's right of appeal therefrom.

When an appeal has been properly perfected, the effect is that all proceedings of whatever nature in the Superior Court are suspended until the appeal has been disposed of by the Supreme Court or withdrawn, and when the judgment is affirmed and the certificate of the Clerk of the

Supreme Court sent down, the judgment and orders of the Superior Court then become again in force with the same vigor as if there had been no interruption by the appeal. The dates fixed in the original judgment for the performance of certain conditions upon which suspension of execution is made to depend would be referred to the next term after the case gets back in the Superior Court. This is clearly the rationale of the statute (C. S., 4654) and the decisions of this Court (*S. v. Casey,* 201 N. C., 185, 159 S. E., 337). And if that rule has not been fully established, this Court has the right, in the exercise of its constitutional power, to "issue any remedial writs necessary to give it general supervision and control over the proceedings of the inferior courts," to hold that, in determining the date on which a thing shall be done under a judgment appealed from, the time consumed by the appeal shall not be counted. I think there is ample provision for this in the statute, but, if not, the Court should establish this fair and reasonable rule, rather than set aside the judgment on the ground of conflict.

The appeal from the judgment presents for review the validity of the conditions upon which execution of the sentence in this case is suspended.

The defendant has a right to know now by the decision of this Court whether or not he shall be required, as the alternative of a two years' prison sentence, to comply with each condition imposed in the judgment. Certainly, he should not be required to elect between a road sentence and a condition which is impossible, unreasonable, or which unnecessarily infringes his personal rights not forfeited by his confession of guilt as charged. While the majority opinion, in view of the disposition of the case, did not decide this question, I take the occasion to express my personal views thereon.

The payment of a fine of $10,000, under the facts found by the court, may not be held unreasonable. A contribution to the school fund in that amount may not be held impossible or even burdensome considering the extent of the unlawful business in which defendant has been engaged. The requirements that he shall dispose of unlawful slot machines, that he shall not violate the slot machine law, or any other State law, and that he shall permit the probation officer to visit his home, may not be held unreasonable or improper. That he shall appear in court from time to time is in accord with the usual practice in suspended judgment cases.

The compulsory requirement that he shall not change his address or leave the county or State without first securing permission, or request that the case be transferred to another county, or that he shall not "have anything to do with any politics" in the State would seem to impose restrictions upon the exercise of rights of personal liberty which he has not forfeited by pleading guilty of a misdemeanor.

While the defendant is not entitled to a declaratory judgment (*Calcutt v. McGeachy,* 213 N. C., 1, 195 S. E., 49), by his plea of guilty and exception to the terms of the judgment, it seems he would be entitled to have this Court rule on the points thus properly presented so that he may make his election whether to comply with the valid conditions imposed or serve the prison sentence. I think some of the conditions as stated in the judgment on the second count should be modified in the respects herein pointed out, and that except as modified the judgment of the able and conscientious judge, who heard the case below, should be affirmed.

SEAWELL, J., joins in this opinion.